Cheryl L. ROSE, Petitioner–Appellant,

v.

David ROSE, Respondent–Appellee.

No. 53A01–8712–CV–00302.

Court of Appeals of Indiana,
First District.

July 28, 1988.

Thomas A. Berry, Berry, Benson, Brown, Mills & Shapiro, Bloomington, for petitioner-appellant.

Edward F. McCrea, McCrea & McCrea, Bloomington, for respondent-appellee.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

Cheryl L. Rose appeals the dissolution of marriage entered August 24, 1987, in which she was awarded all property held in her name and all jointly held assets, consisting of the contents of the marital residence. Her husband, David Rose, was awarded all property held solely in his name. The division of property was based on an antenuptial agreement entered into by the parties prior to marriage. We affirm.

## FACTS

David and Cheryl Rose were married on Sunday, March 9, 1980. Prior to their marriage, they had lived together for approximately one year. Both parties had been married and divorced previously. On Fri-

day, March 7, 1980, David Rose presented an antenuptial agreement to Cheryl. He told Cheryl that if she did not sign the document, he would not marry her. David testified that he had discussed the necessity of an antenuptial agreement with Cheryl several times throughout the months prior to their marriage. Cheryl testified that she had no recollection of having discussed an antenuptial agreement until the document was presented to her. Before Cheryl signed the document David told her that she was giving up "a lot". Cheryl told David that she was marrying for love, not money, and she signed the document. She did not seek legal advice prior to signing the antenuptial agreement. Cheryl later testified that she signed a one page document on March 8, 1980. The antenuptial agreement presented by David to the court was a four page document signed March 7, 1980.

When David and Cheryl were married in 1980, David Rose owned a drywall business with his partner, John Walker. Cheryl had visited this business on occasion. David also owned the real estate upon which the marital residence was built and he owned a farm in partnership with his brother. In addition, David owned a Corvette and a trailer. Cheryl Rose owned an automobile and miscellaneous furniture. She is a licensed beautician although she had never used this training for gainful employment.

At the time of the dissolution, David retained the above named property and also had acquired an interest in Rose and Walker, Inc., Rose and Walker Supply, Inc., Country Club Auto Sales, ERW Corporation, and other assets. At this time Cheryl owned a 1974 Honda automobile which she had given to her daughter. She also had a checking account in her name.

On December 30, 1986, Cheryl Rose filed a petition for dissolution of marriage. On January 29, 1987, a preliminary hearing was held at which time David Rose's attorney introduced into evidence a document titled "Prenuptial Agreement". A hearing was held on April 13, 1987, in order to determine the legal efficacy of the document. Cheryl Rose testified that she had signed a one page antenuptial agreement, but stated that she had never seen the four page document prior to its presentation into evidence. A handwriting expert testified that the signature on the four page document was not that of Cheryl Rose. David Rose maintained that Cheryl did sign the four page antenuptial agreement. On April 22, 1987, the trial court issued its finding that the four page antenuptial agreement was valid and legally enforceable.

On May 15, 1987, Cheryl Rose filed a notice of voluntary dismissal. On May 18, 1987, David Rose filed a motion to strike notice of dismissal and filed a cross petition for dissolution of marriage. The hearing on these motions was held on June 29, 1987, at which time both parties indicated that no reconciliation or movement in that direction had taken place. On July 7, 1987, the trial court granted David Rose's motion to strike notice of dismissal. Cheryl filed a motion to reconsider based on newly discovered evidence on July 29, 1987. She had obtained evidence which she claimed supported her testimony that she had not signed the four page antenuptial agreement. Cheryl tendered an affidavit by Beverly J. Hays, an employee at David's drywall business, which stated that another employee at the business had told Beverly Hays that she had typed a one page antenuptial agreement for David Rose. Cheryl Rose offered no reason as to why this evidence was not presented at an earlier date. On July 30, 1987, the motion was denied.

The trial court issued its final entry of dissolution of marriage on August 3, 1987. According to the terms of the antenuptial agreement, David Rose was awarded all property held in his name. Cheryl Rose was awarded all property held in her name and all jointly held property consisting of the marital household furnishings. Cheryl Rose filed a motion to correct errors on October 20, 1987, which was denied on November 16, 1986.

## ISSUES

1. Was the trial court correct in striking Cheryl's notice of voluntary dismissal?

2. Did the trial court properly enforce the Antenuptial Agreement entered into by the parties?

3. Was the trial court correct in determining that the Antenuptial Agreement was unambiguous and in distributing assets according to its terms?

4. Was the trial court correct in denying Cheryl Rose's motion to reconsider based on newly discovered evidence?

## DISCUSSION AND DECISION

A reviewing court must determine whether evidence presented below can serve as a rational basis for the trial court's decision. However, the reviewing court will neither reweigh the evidence nor reassess the credibility of witnesses in making this determination. *Eyler v. Eyler* (1986), Ind., 492 N.E.2d 1071, 1075; *Taylor v. Taylor* (1982), Ind., 436 N.E.2d 56, 58. In applying this strict standard of review, the court of appeals will consider only the evidence most favorable to the trial court's disposition and reasonable inferences which can be drawn therefrom. To obtain reversal, it must be shown that the trial court abused its discretion in arriving at its decision. *Schnarr v. Schnarr* (1986), Ind. App., 491 N.E.2d 561, 563.

*Issue One*

Cheryl Rose first contends that the trial court abused its discretion in striking her motion for voluntary dismissal. Indiana Rules of Procedure, Trial Rule 41(A) states in pertinent part:

"(1) *By Plaintiff—By Stipulation.* Subject to contrary provisions of these rules or of any statute, an action may be dismissed by the plaintiff without order of court:

(a) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs."

T.R. 41(A) also is modified by T.R. 41(C) which provides:

"Dismissal of Counterclaim, Cross-Claim, or Third-party Claim. The provisions of this rule apply to the dismissal of any counterclaim, cross-claim, or third-party claim. A voluntary dismissal by the claimant alone pursuant to subsection (1) of subdivision (A) of this rule shall be made before a responsive pleading is served or, if there is none, before the introduction of evidence at the trial or hearing."

▆▆▆ Generally, dismissals should be allowed unless the defendant will suffer some legal prejudice other than the mere prospect of a second lawsuit. *Levin and Sons, Inc. v. Mathys* (1980), Ind.App., 409 N.E.2d 1195, 1198. The purpose of the rule pertaining to the voluntary dismissal of an action was to eliminate evils resulting from the absolute right of a plaintiff to take a voluntary nonsuit at any stage in the proceedings before the pronouncement of judgment and after the defendant had incurred substantial expense or acquired substantial rights. *See Harvey Aluminum, Inc. v. American Cyanamid Co.* (2nd Cir. 1953), 203 F.2d 105, 107, *cert. denied* 345 U.S. 964, 73 S.Ct. 949, 97 L.Ed. 1383; *Stevenson v. United States* (D.Tenn.1961), 197 F.Supp. 355, 357; *Toulmin v. Industrial Metal Protectives, Inc.* (D.Del.1955), 135 F.Supp. 925, 927.[1]

▆▆▆ Clearly, allowing a voluntary dismissal in the present case would frustrate the purpose cited above. Two (2) preliminary hearings were conducted prior to Cheryl's filing her notice of voluntary dismissal. The initial preliminary hearing held January 29, 1987, resulted in 81 pages of testimony and a court order requiring David to pay $2,750.00 to Cheryl for sup-

---

1. While these cases are interpreting Fed.R.Civ.P. 41(a), the federal rule is essentially identical to T.R. 41(A):

"*By Plaintiff; by Stipulation.* Subject to the provisions of Rule 23(e), of Rule 66, and of any statute of the United States, an action may be dismissed by the plaintiff without order of court (i) by filing a notice of dismissal at any time

before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs."

Therefore, absent Indiana case law expounding on the purpose behind the adoption of T.R. 41(A), this court will glean such purpose from federal decisions interpreting an identical statute.

port and suit money. On April 13, 1987, a second hearing was held to determine the legal efficacy of the antenuptial agreement. The decision on the validity of this agreement had a determinative effect on the dissolution proceeding since both parties agreed that no reconciliation nor movement in that direction had occurred. Written briefs were prepared for this hearing by both parties, and the testimony of six (6) witnesses resulted in an 88 page transcript. Subsequently, the agreement was found to be valid and enforceable. Only after this adverse finding did Cheryl file a notice of voluntary dismissal. At this advanced stage in the proceeding both parties had invested considerable time and expense on this litigation.

 Where a hearing has been conducted on an issue which goes to the merits of the controversy, voluntary dismissal is inappropriate. *Harvey*, 203 F.2d at 107. In *Harvey*, a hearing on the plaintiff's motion for a preliminary injunction prohibiting the sale of assets pending determination of the plaintiff's suit for specific performance squarely raised the merits of the controversies. This hearing required several days of testimony and produced a 420 page record. *Id.* The court held that under these circumstances, allowing a voluntary dismissal, though attempted prior to any answer or motion for summary judgment was filed, would not be in accord with the essential purpose of rule 41(a). *Id.* at 108. Therefore, despite the fact that no responsive pleading was filed in the present case,[2] the trial court was free to determine that the proceedings had progressed to the stage where allowing a voluntary dismissal would violate the purpose of the rule and would result in legal prejudice to David Rose.[3]

2. No responsive pleading is required in a dissolution proceeding. Indiana Code section 31-1-11.5-4(d); *Brown v. Brown* (1979), 180 Ind.App. 1, 387 N.E.2d 72.

3. The appellant argued that T.R. 41(C) also supported her notice of voluntary dismissal. She is mistaken. T.R. 41(C) clearly supports the contrary in that it proscribes voluntary dismissal after evidence has been heard at the trial.

Cheryl Rose further contends that the desired result in a dissolution action is dismissal and reconciliation. Therefore, the trial court's decision was adverse to a stated public policy. However, as stated in Cheryl's brief, no reconciliation or movement in that direction had taken place between David and herself at the time she filed her notice of voluntary dismissal. The important public policy of facilitating reconciliation, therefore, was unaffected by the trial court's ruling. The trial court did not abuse its discretion in striking Cheryl's notice of voluntary dismissal.

*Issue Two*

 Cheryl next contends that the antenuptial agreement was unenforceable because David failed to disclose fully his assets to Cheryl prior to having her sign the document nor did David question Cheryl to ascertain whether or not she fully understood the agreement. Antenuptial agreements are valid and binding provided they are entered into freely and without fraud, duress, or misrepresentation and are not unconscionable. *In re Marriage of Boren* (1985), Ind., 475 N.E.2d 690, 693. No absolute duty to disclose the value of all possessions exists when entering into an antenuptial agreement. *Matter of Estate of Palamara* (1987), Ind.App., 513 N.E.2d 1223, 1228. Antenuptial agreements are not per se unconscionable simply because the effect of the document is to leave the spouse with little. *Palamara*, 513 N.E.2d at 1228.

 In the present case the evidence most favorable to the judgment reveals that David and Cheryl lived together for approximately one (1) year prior to their marriage. During that time David discussed with Cheryl the necessity of an antenuptial agreement several times. Cheryl repeatedly told David that she was mar-

Clearly where the dissolution proceeding had reached a stage where voluntary dismissal was inappropriate under T.R. 41(A) as the court found herein, so too would voluntary dismissal be unavailable under T.R. 41(C).

Cheryl's contention that she was entitled to dismissal under T.R. 41(A)(2) likewise is unavailing.

rying him for love, not money, and never sought outside legal advice on the matter. When the antenuptial agreement was signed Cheryl knew David owned a trailer, a Corvette, and the drywall business which she had visited on occasion. Additionally, immediately prior to Cheryl's signing the agreement, David warned her that in signing she would be giving up "a lot".

While David Rose did say that he would not marry Cheryl if she did not sign the antenuptial agreement, this does not reflect a coercive stance on David's part. Nor was any evidence of misrepresentation or an attempt to defraud Cheryl presented. This is not a case where immediately prior to the wedding ceremony the groom springs an antenuptial agreement on the blushing bride along with an ultimatum. *See, Palamara*, 513 N.E.2d at 1230. Rather, the evidence reveals that Cheryl was told repeatedly months prior to the ceremony that such a document would be required. While the provisions of the agreement dictate a seemingly harsh result in that David is awarded assets in excess of one million dollars and Cheryl is awarded an outdated automobile and the household furniture, as stated above, the extremity of result does not make the agreement per se invalid. Therefore, the trial court did not engage in an abuse of discretion in upholding the validity of this antenuptial agreement.

*Issue Three*

Cheryl's third contention is that the trial court erred in determining that provision eight (8) of the antenuptial agreement included individually held property acquired after the marriage and unrelated to the husband's drywall business. Antenuptial agreements are to be construed according to principles applicable to the construction of contracts generally. *In re Estate of McClain v. McClain* (1962), 133 Ind.App. 645, 652, 183 N.E.2d 842, 846. The terms of a contract are ambiguous if reasonably intelligent persons on reading the contract would honestly differ as to the meaning of those terms. *Indiana–Kentucky Elec. v. Green* (1985), Ind.App., 476 N.E.2d 141, 145, *trans. denied*. Absent an ambiguity a court will not construe a con-

tract. *Reeder v. Ramsey* (1984), Ind.App., 458 N.E.2d 682, 685. Provision eight of the antenuptial agreement reads as follows:

"EIGHTH: The parties mutually understand that subsequent marriages are not always successful and in the event that either of these parties seeks a divorce and obtains a divorce, that neither of them shall make any claims, demands or charges by way of attorney fees, support, alimony, property settlement, in any manner or respect, upon the estate and property of the other; and that the separate property of each shall be preserved to each of the parties, in the event the parties shall elect to own real or personal property jointly, it shall be the understanding of David Allen Rose and Cheryl Overton with respect to said real or personal property that each owns an undivided one-half interest in said property."

Cheryl claims that provision eight is ambiguous in that it does not expressly refer to individually held property acquired after the marriage. Courts will not find uncertainties in a contract if it is possible logically to construe it otherwise. *McClain*, 133 Ind.App. at 655, 183 N.E.2d at 847. The plain meaning of provision eight is obvious and clearly includes individually held property acquired after the marriage. In neither the clause pertaining to jointly held property, nor the clause pertaining to individually held property, is there any reference to whether the property was acquired prior to or subsequent to the marriage. Provision eight clearly delineates the parties' rights regarding all property held by either party or both in the event of a divorce. Unambiguous language of a contract is conclusive upon the parties to the contract and upon the courts. *Turnpaugh v. Wolf* (1985), Ind.App., 482 N.E.2d 506, 508. The trial court was well within its discretion to determine that reasonable persons would not differ as to the meaning of provision eight and, therefore, to divide the property of the parties according to the plain meaning of the language of that provision.

*Issue Four*

 Cheryl's final contention is that the trial court erred in refusing to grant her motion to reconsider based on newly discovered evidence. This motion was based on an affidavit by Beverly Hays, an employee at David's drywall business. The affidavit stated that another employee at the business had told Beverly Hays that she had prepared a one page antenuptial agreement for David Rose. Cheryl's motion was simply an attempt to reopen her case prior to judgment. Refusal by a trial court to reopen a case for presentation of additional evidence will be set aside only for abuse of discretion. *Oxendine v. Pub. Serv. Co. of Indiana, Inc.* (1980), Ind.App., 423 N.E.2d 612, 613; *Hawblitzel v. Hawblitzel* (1983), Ind.App., 447 N.E.2d 1156, 1160.

 Cheryl argues that since she was not requesting a new trial she was not subject to the requirements of Indiana Rules of Procedure, Trial Rule 59(A)(6).[4] Technically, this is correct. However, it is within the trial court's discretion to consider these requirements when determining whether or not to reopen a case based on newly discovered evidence. To justify a new trial because of newly discovered evidence, the moving party must show that the evidence is not merely cumulative, that it was not available at the time of trial, that it wasn't known to movant at time of trial, and that it could not have been discovered with reasonable diligence. *Cua v. Ramos* (1982), Ind., 433 N.E.2d 745, 750; *Trivett v. Trivett* (1968), 143 Ind.App. 643, 646, 242 N.E.2d 44, 47. In addition, the newly discovered evidence must be such as to raise a strong presumption that, in all probability it will bring about an opposite result at another trial. *Cua,* 433 N.E.2d at 751. Cheryl offered no explanation as to why Beverly Hays' testimony had not been offered earlier. Nor does Hays' testimony

appear to be of such moment so as to indicate that the outcome of the preliminary hearing to determine the enforceability of the antenuptial agreement would have been affected by its presentation at trial.[5] Therefore, it cannot be said that the trial court acted outside its discretion in denying Cheryl Rose's motion to reconsider based on new evidence.

Affirmed.

SHIELDS, P.J. and ROBERTSON, J. concur.

---

4. Trial Rule 59(A)(6) states:
 "(A) Motion to Correct Error—Bases for. The basis for a motion to correct error are established, without limitation, as follows:
 (6) Newly discovered material evidence which could not, with reasonable diligence, have been discovered and produced at the trial."

5. Beverly Hays' testimony as recited in her affidavit consists mainly of hearsay which is inadmissible evidence. Therefore, this newly discovered evidence most likely would have had no bearing on the court's determination as to the validity of the antenuptial agreement.