**PRINCIPAL LIFE INSURANCE CO., Appellant,**

v.

**Dwight NEEDLER, Appellee.**

No. 71A03–0404–CV–169.

Court of Appeals of Indiana.

Oct. 25, 2004.

Kristin R. Fox, Leone Halpin & Konopinski, South Bend, IN, Attorney for Appellant.

Patrick J. Hinkle, Patrick J. Hinkle, P.C., South Bend, IN, Attorney for Appellee.

## OPINION

BARNES, Judge.

### Case Summary

Principal Life Insurance Company ("Principal") appeals the denial of its motion to correct error, which sought to set aside the trial court's grant of plaintiff Dwight Needler's motion to dismiss his motion to adjudicate a lien held by Principal. We affirm.

### Issue

The sole restated issue is whether the trial court abused its discretion in granting Needler's motion to voluntarily dismiss pursuant to Indiana Trial Rule 41(A)(2) and in denying Principal's motion to correct error.

## Facts

On May 30, 2000, Fabias Shipman stabbed and robbed Needler immediately after Needler had cashed a check at 1st Source Bank ("the Bank") in South Bend. Among other damages, Needler incurred $18,704.28 in medical expenses, of which Principal paid $12,483.18. Needler did not attempt to sue Shipman, who was sentenced to twenty-five years in prison for the attack. He did, however, sue the Bank for alleged negligence in failing to prevent the attack and in failing to train and supervise its employees adequately. Initially, Needler demanded $250,000 from the Bank to settle the case. Needler agreed to settle with the Bank for $49,000 because of questions about the extent of the Bank's liability, if any, for this incident. On September 4, 2003, Needler informed the trial court of the settlement and his intention to dismiss the case against the Bank.

Principal asserted that it was entitled to a lien against the settlement amount for the entirety of the medical bills it had paid on Needler's behalf, less a pro rata share of attorney fees and litigation expenses. Needler contended the amount of the lien should be reduced because he did not recover the full value of his total claim due to the settlement and an inability to collect from Shipman. Therefore, on September 17, 2003, Needler filed a "Motion to Adjudicate Lien," pursuant to the Indiana Lien Reduction Statute[1], under the same cause number and in the same court as the underlying suit against the Bank. The motion

asserted that Principal was entitled to a lien of only $651.79. Principal agreed to become an intervening defendant and submitted itself to the jurisdiction of the trial court in order to contest Needler's assertion. It claimed it was entitled to recover, after attorney fees and litigation expenses, $7,647.05 against the $49,000 settlement.

The trial court set a hearing on the motion for October 16, 2003; the type of hearing to be held was not specified. Needler later requested that this hearing be continued and that the trial court schedule a "status conference." The trial court then set a hearing for November 18, 2003. The order setting the hearing referred to it as a "lien adjudication hearing," while the chronological case summary refers to it both as a "lien adjudication hearing" and a "status conference." App. pp. 201, 4.

The day before the hearing, Needler filed a "Supplemental Brief in Support of Motion to Adjudicate Lien," which included certain documents and an affidavit signed by Needler as exhibits. *Id.* at 153. At the hearing, counsel for Needler stated, "what we are asking you to do here today under the applicable law is to determine the total value of the case, and from that number, we can then determine the percentage of reduction of the lien for comparative fault." Hearing Tr. p. 12. Counsel made arguments based on his documentary evidence and Needler's affidavit but called no witnesses. Counsel for Principal argued that all of Needler's proposed evidence was inadmissible hearsay

---

1. The statute provides:

   If a subrogation claim or other lien or claim that arose out of the payment of medical expenses or other benefits exists in respect to a claim for personal injuries or death and the claimant's recovery is diminished:
      (1) by comparative fault; or
      (2) by reason of the uncollectibility of the full value of the claim for personal inju-

   ries or death resulting from limited liability insurance or from any other cause; the lien or claim shall be diminished in the same proportion as the claimant's recovery is diminished. The party holding the lien or claim shall bear a pro rata share of the claimant's attorney's fees and litigation expenses.

   Ind.Code § 34–51–2–19.

and, therefore, the trial court should not consider it; she also stated that she was expecting "something akin to an evidentiary hearing." *Id.* at 13. At the conclusion of arguments by counsel, and before the trial court made any ruling, counsel for Needler interrupted and said, "I wasn't sure exactly what the Court's procedure is, how you would handle this." *Id.* at 27. The trial court stated, "I don't have a procedure.... I never seen one of these things before." *Id.* at 28. After counsel for Needler and Principal argued as to whether an evidentiary hearing on Needler's motion was required, the trial court expressed its belief that a separate declaratory judgment action by Needler would be "the most logical" way to resolve the dispute between Needler and Principal. *Id.* at 29. Counsel for Needler then made an oral motion to dismiss, to which counsel for Principal objected. The trial court granted the motion the next day. Needler subsequently filed a declaratory judgment action against Principal in another court.

Principal filed a motion to correct error, claiming the trial court improperly granted Needler's voluntary motion to dismiss. In support of this motion, Principal submitted copies of emails between counsel for both parties that it claimed demonstrated a mutual understanding that the November 18 hearing would be an evidentiary hearing. After considering this evidence and the argument of counsel, the trial court denied the motion to correct error. Principal now appeals.

### Analysis

■ We review a trial court's denial of a motion to correct error for an abuse of discretion. *White v. White,* 796 N.E.2d 377, 379 (Ind.Ct.App.2003). An abuse of discretion occurs if the trial court's decision is against the logic and effect of the facts and circumstances, or reasonable inferences therefrom, that were before the court, or if the decision is without reason or based upon impermissible reasons or considerations. *Id.* We also consider the standard of review for granting a plaintiff's motion for voluntary dismissal that is implicated in this case, which also is an abuse of discretion. *Rose v. Rose,* 526 N.E.2d 231, 234 (Ind.Ct.App.1988), *trans. denied.* Judicial discretion is a judge's privilege to decide and act in accordance with what is fair and equitable within the confines of justice, in light of and confined to the facts and circumstances of a particular case. *Cloyd v. Pasternak,* 791 N.E.2d 757, 759 (Ind.Ct.App.2003).

■ Both parties agree that Indiana Trial Rule 41(A)(2) governs this case.[2] That rule permits a plaintiff to voluntarily dismiss an action without prejudice after a responsive pleading or motion for summary judgment has been filed, but only pursuant to court order. "Generally, dismissals should be allowed unless the defendant will suffer some legal prejudice other than the mere prospect of a second lawsuit." *Rose,* 526 N.E.2d at 234. What constitutes "legal prejudice" is not clearly defined. We have previously turned to interpretations of Federal Rule of Civil Procedure 41(A) when construing Indiana Trial Rule 41(A), given that the two rules are identical and there is little Indiana case law addressing the Indiana rule. *See Levin & Sons, Inc. v. Mathys,* 409 N.E.2d 1195, 1198 (Ind.Ct.App.1980). One noted treatise has observed:

> Although case law does not precisely define "legal prejudice," the cases focus on the rights and defenses available to

---

**2.** We deem Needler's "Motion to Adjudicate Lien" to be an "action" within the contemplation of Indiana Trial Rule 41(A)(2) and Principal's claim that the lien should be in the amount of $7,647.05 to be a responsive pleading within the scope of that rule.

the defendant; the courts will consider whether there is prejudice to some legal interest, claim, or argument of the defendant, such as the loss of a federal forum, or the inability to conduct meaningful discovery. Legal prejudice is shown when actual legal rights are threatened or when monetary or other burdens appear to be extreme or unreasonable....

[T]he factors most commonly considered on a motion for a voluntary dismissal are: (1) the extent to which the suit has progressed, including the defendant's effort and expense in preparing for trial, (2) the plaintiff's diligence in prosecuting the action or in bringing the motion, (3) the duplicative expense of relitigation, and (4) the adequacy of plaintiff's explanation for the need to dismiss. Other factors that have been cited include whether the motion is made after the defendant has made a dispositive motion or at some other critical juncture in the case and any vexatious conduct or bad faith on plaintiff's part.

8 *Moore's Federal Practice* § 41.40[6], pp. 41–140—41–142 (3d ed.2003). This list of considerations is not exhaustive. *Id.* at p. 41–141. Additionally, this court has held that where a hearing has been conducted on an issue that goes to the merits of the controversy, voluntary dismissal is inappropriate. *Rose,* 526 N.E.2d at 235. Principal essentially argues that is precisely what happened in this case: a hearing was held on the merits of the controversy before Needler moved to dismiss and, therefore, the trial court should have denied the motion.

We disagree. The main problem in this case is the confusion on the part of both parties and the trial court as to what should have transpired at the November 18 hearing. We observe that this is likely because neither the Lien Reduction Statute itself nor case law interpreting it provide guidance as to how a proceeding to reduce a lien should be initiated and conducted. This lack of guidance left everyone unclear as to what should have taken place at the November 18, 2003 hearing.[3] There seems to have been no consensus as to whether an evidentiary hearing with live testimony was required or whether affidavits, documentary evidence, and argument of counsel would suffice to resolve Needler's motion. Indeed, it appears based on what we can glean from the limited case law that motions or petitions to adjudicate liens under the Lien Reduction Statute have, at least in some cases, been resolved solely on the basis of documentary evidence and argument of counsel and not pursuant to a full evidentiary hearing. *See Family & Soc. Services Admin. v. Schluttenhofer,* 750 N.E.2d 429, 431 (Ind.Ct.App. 2001)[4] (trial court doubted that lien holder was entitled to hearing and only allowed argument of counsel before ruling on petition to reduce lien); *In re Guardianship of Wade,* 711 N.E.2d 851, 853 (Ind.Ct.App. 1999) (reference only to trial court entertaining argument of counsel before ruling on motion to reduce lien); *but see Allstate Ins. Co. v. Smith,* 656 N.E.2d 1156, 1158 n. 3 (Ind.Ct.App.1995) (opining in dicta that evidence is necessary to determine whether a plaintiff's recovery is within the pur-

---

**3.** Like the trial court, counsel for Principal said she had never previously handled a request to reduce a lien.

**4.** Our supreme court granted transfer in *Schluttenhofer,* thus vacating our opinion. *See Family & Soc. Services Admin. v. Schluttenhofer,* 768 N.E.2d 885 (Ind.2002). We cite

our opinion only for its reference to how the trial court conducted the underlying lien reduction hearing and not for any substantive holding. On transfer, our supreme court neither criticized the trial court's course of action nor described it in any detail.

view of the Lien Reduction Statute). It also appears that proceedings to reduce a lien often take the form of a declaratory judgment action, as the trial court thought would be appropriate, but sometimes they appear to have been litigated through a motion ancillary to the underlying lawsuit, as Needler initiated this action. *Compare Department of Pub. Welfare v. Couch,* 605 N.E.2d 165, 168 (Ind.1992) (stating that a declaratory judgment action "is available" to determine application of Lien Reduction Statute), *with Wade,* 711 N.E.2d at 853 (referring to *"motion* to reduce the lien pursuant to Indiana's lien reduction statute") (emphasis added).

Principal made it clear at the hearing that it believed a full evidentiary hearing, with live testimony and strict adherence to the rules of evidence, was necessary. It also contended that the November 18 hearing was Needler's one chance to present such evidence. We observe, however, despite Principal's repeatedly labeling the hearing an "evidentiary" hearing throughout its brief, nothing in the trial court's records labeled it as such, either before or after the fact. Principal also contends the trial court set the November 18 hearing in response to a motion by Needler to set an evidentiary hearing. The motion Principal refers to is labeled "Motion for Setting of Status Conference" and "requests this Court [to] set a status conference *in order to set discovery deadlines and set an evidentiary hearing* on the Plaintiff's Motion to Adjudicate the Lien." App. p. 202 (emphasis added). The motion clearly appears to have requested a status conference for the purpose of setting a later evidentiary hearing and discussing discovery matters; it does not appear to have requested an immediate evidentiary hearing.

At the hearing itself, there is nothing in the transcript indicating any preliminary discussion between the parties and the trial court as to the nature of the hearing. At the conclusion of the hearing and after Principal characterized the hearing as an evidentiary hearing, the trial court stated, "I am not sure it was an evidentiary hearing, we have talked a lot, but I am not sure what it was." Hearing Tr. p. 32. We also note that the trial court apparently was not prepared to issue any final ruling concerning Needler's motion at the conclusion of the hearing. All that it said before Needler interrupted was "Hearing is held concerning the Plaintiff's ..." *Id.* at 27. It also said later, "My concern is more procedural than substantive." *Id.* at 28. It appears, based on these and other comments, that the court was attempting to determine the proper course of action for considering the merits of the motion. Thus, this case is unlike others where it was held improper to grant a voluntary dismissal because substantive hearings had already been held that resulted in rulings on the merits of contested issues. *Cf. Rose,* 526 N.E.2d at 234–35.

Principal argues that notwithstanding the trial court's records and what actually transpired at the November 18 hearing, there was a mutual understanding between Principal and Needler that the hearing would be evidentiary, based on communications between counsel prior to the hearing that Principal submitted to the trial court as part of its motion to correct error. We disagree that the communications necessarily support that assertion. Some of the communications concerned supporting documentation for Needler's claimed litigation expenses. In one email, counsel for Principal stated her opinion that "I do not believe that the judge will set any 'discovery' deadlines in this matter, so a status (or scheduling) conference is not necessary." App. p. 103. There is no indication that counsel for Needler expressed agreement with this opinion. In another email,

counsel for Needler stated that he intended to call certain witnesses and present certain exhibits to support his lien adjudication motion. However, the email does not state that he intended to present such evidence at the November 18 hearing and, indeed, no such witnesses were called at the hearing. In sum, the communications do not definitively establish that counsel for Needler believed the November 18 hearing would be a full evidentiary hearing.

■■ It would also seem that much of the legal and factual background work counsel for Principal did in preparation for the November 18 hearing would be directly transferable to the declaratory judgment proceeding Needler filed in a different court, which would present precisely the same issues as those raised in the motion to adjudicate lien but in a slightly different format. The mere fact that a defendant has incurred litigation expenses in preparation for a trial or proceeding does not mandate denial of a voluntary motion to dismiss. "[A] voluntary dismissal should not be denied when the work product in the dismissed action will not be wasted but may be utilized in subsequent or continuing litigation." *Moore's* § 41.40[7][a], p. 41–146 (citing *inter alia Puerto Rico Mar. Shipping Auth. v. Leith*, 668 F.2d 46, 50 (1st Cir.1981)). That appears to be the case here—substantial portions of the work product related to the motion to adjudicate lien proceedings presumably could be used in the declaratory judgment proceedings.[5] The fact that Principal may have incurred some litigation expenses and attorney fees in preparation for the November 18 hearing did not require the trial court to deny Needler's motion to dismiss. We also note that this action had been pending for only two months at the time of the dismissal motion and that this was the first hearing in the matter, which weighs in favor of allowing dismissal. *See id.* § 41.40[7][a], p. 41–143.

■ Although the primary purpose of requiring a court order before allowing dismissal under Trial Rule 42(A)(2) is to protect the interests of the defendant, "the court should weigh the equities and do justice to all the parties in the case." *Id.* § 41.40[5][a], p. 41–135 (citing *inter alia Belkow v. Celotex Corp.*, 722 F.Supp. 1547, 1552 (N.D.Ill.1989)). Here, the view of the facts and circumstances most favorable to the trial court's rulings is that the nature and intended purpose of the November 18 hearing was unclear, at least with respect to Needler and to the trial court itself. After debate between counsel as to what was required with respect to a proceeding under the Lien Reduction Statute, the trial court suggested that a declaratory judgment action would be a more appropriate forum for resolving Needler's claim. It was only at that point that Needler moved to dismiss. Clear evidence of bad faith or vexatiousness on Needler's part is lacking; instead, Needler had an adequate explanation for moving to dismiss when he did. Also, it has been said that voluntary dismissal may be granted to allow a plaintiff to correct a defective pleading. *See Moore's*, § 41.40[7][b][iv]. This is essentially what occurred here, in that the trial court implied it would be better to file a separate declaratory judgment action and Needler responded to that implication.

That Principal prepared for the November 18 hearing thinking it would be different from what it actually turned out to be

---

5. There appears to have been no extensive discovery conducted in preparation for the November 18 hearing in any event, such as the exchange of interrogatories or the taking of depositions.

and that it will be subjected to a second action are insufficient to make the trial court's granting of the motion to dismiss and denial of the motion to correct error abuses of discretion. Principal cannot demonstrate clear legal prejudice caused by the granting of the dismissal, such as the nullification of favorable rulings or substantial expense beyond the creation of work product that should be transferable to the declaratory judgment action. The dismissal was consistent with equity and justice for all parties. As such, we cannot say the trial court abused its discretion in granting Needler's motion to dismiss and in denying Principal's motion to correct error.

### Conclusion

Principal has failed to demonstrate the trial court abused its discretion in permitting Needler to dismiss his motion to adjudicate lien and in refusing to reconsider that decision. We affirm the denial of the motion to correct error.

Affirmed.

NAJAM, J., and SULLIVAN, J., concur.