

I N T H E

# Court of Appeals of Indiana

In re the Adoption of G.S. (Minor Child)

A.T., et al.

*Appellant-Petitioner*



FILED

Feb 26 2025, 10:30 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

v.

J.S.,

*Appellee-Petitioner*

February 26, 2025

Court of Appeals Case No.
24A-AD-793

Appeal from the Fulton Circuit Court

The Honorable Jacob D. Winkler, Special Judge

Trial Court Cause No.
25C01-2308-AD-7
32D03-2307-JP-98
52D02-2401-CB-78

**DeBoer, Judge.**

## Case Summary

[1] Approximately one month after J.S. ("Father") filed his petition to establish paternity in Hendricks County, A.T. ("Stepfather") petitioned to adopt the minor child ("Child") without Father's consent in Fulton County. The two Petitions were consolidated into the Fulton County case. The day before the adoption hearing, Stepfather moved to voluntarily dismiss his adoption petition without prejudice. The trial court granted his motion and Stepfather refiled a new petition for adoption in Hamilton County the following day. Father objected to the dismissal based on Indiana Trial Rule 41(A)(2), claiming significant resources had already been expended to litigate the petitions. The trial court reversed its order dismissing the matter and reinstated jurisdiction. Following the adoption hearing, the trial court concluded that Father's consent was necessary to adopt Child. Stepfather appeals, challenging the trial court's reinstatement of jurisdiction and its denial of his adoption petition. Finding the trial court did not err by reinstating its jurisdiction of Stepfather's petition and that Father did not unjustifiably fail to significantly communicate with Child or provide for her care and support for a period of at least one year, we affirm.

## Facts and Procedural History

[2] J.T. ("Mother") and Father became romantically involved in 2014, and in 2021 they purchased a residence together in Brownsburg, Indiana. After Child was born on April 16, 2021,[1] Father stayed home to care for her until April 2022. In the spring of 2022, the couple separated, with Father moving to North Carolina for approximately five to six weeks. During this time, he called or chatted by video with Child daily.

[3] Close to Child's first birthday, Father returned to Indiana and moved into the couple's residence while Mother and Child resided elsewhere. Mother moved at least twice after the parties' separation without notifying Father of her new address. Despite wanting to celebrate Child's first birthday and traveling from North Carolina to Indiana to do so, Father did not get to see Child. The last time Father saw Child was on April 20 or 21, 2022.

[4] Over the next several months, Father sent Mother multiple texts, emails, and messages requesting to spend time with Child, which Mother either denied or ignored. He offered to meet Mother halfway between their respective residences, bought a car seat at Mother's request, and purchased gifts for Child that Mother would not accept. Mother offered parenting time with Child at Mother's parents' home on one occasion, but Father declined because he was

---

[1] Father signed the birth certificate at the hospital when Child was born.

concerned her family's hostility toward him would escalate. Despite his repeated requests for time with Child, Father did not see Child at any point leading up to or on her second birthday.

[5] In May 2022, Mother filed for a partition of the joint residence. After a year-long, contentious legal battle and Father's expenditure of a significant amount in attorney fees, each party was awarded $47,469.60 in sale proceeds on March 21, 2023.

[6] From the time the parties separated in the spring of 2022 until September of 2022, Father was unable to secure employment. Until he received his first paycheck in October 2022, Father paid for his living expenses by credit card. He earned approximately $13,000 in 2022, and $54,907 in 2023.

[7] On July 5, 2023, in Hendricks County under Cause 32D03-2307-JP-98, Father petitioned to establish paternity and determine child custody, support, and parenting time ("Paternity Petition").[2] On July 31, 2023, Mother married A.T. ("Stepfather"). Four days later, on August 4, 2023, Stepfather filed a Verified

---

[2] Indiana Appellate Rule 50 requires the Appellant to prepare and submit an Appendix which contains a copy of any documents necessary for resolution of the issues raised on appeal. Appellant's Appendix omits several documents required for our review, including the Paternity Petition. Although we can sua sponte take judicial notice of the records of a court of this state, this does not relieve the Appellant from the requirement to submit a complete Appendix on appeal. *See* Ind. Evidence Rule 201.

We also caution Appellant to ensure that all Appendices comply with the filing requirements in Appellate Rule 23(F) and Indiana Access to Court Records Rule 5 by redacting all confidential information from public records.

Petition for Adoption of Minor Child ("Adoption Petition") in Fulton Circuit Court ("Trial Court") because that was where Stepfather and Child lived. In his Adoption Petition, Stepfather claimed Father's consent for the adoption was not required because he had failed without justifiable cause to communicate significantly with the Child. The Trial Court assumed jurisdiction of the Paternity Petition and consolidated it into Stepfather's Adoption Petition under Cause 25C01-2308-AD-7. Father filed a notice contesting the adoption on August 28, 2023, and the parties began conducting discovery. A hearing on Stepfather's Adoption Petition was scheduled for February 7, 2024.[3]

[8] In the few days before the February 7, 2024 adoption hearing, the parties filed a flurry of motions. Of relevance to this appeal is Stepfather's motion to dismiss his Adoption Petition without prejudice, filed on February 6, 2024. On February 7, 2024, instead of hearing evidence on Stepfather's Adoption Petition, the Trial Court held a hearing on Stepfather's motion to dismiss and dismissed his Adoption Petition without prejudice. The next day, and over six months after his original Adoption Petition had been filed, Stepfather filed a new petition for the adoption of Child in Hamilton County, because that was where Stepfather's new attorney was located. At the same time, Stepfather

---

[3] Father's Paternity Petition was stayed while Stepfather's Adoption Petition was pending.

moved the Trial Court to transfer the Paternity Petition to Hamilton County where the Petition would be consolidated into the new adoption petition.

[9] On February 9, 2024, with the Paternity Petition still pending before the Trial Court in Fulton County, Father filed a verified motion to correct error. In his motion, Father argued that the Trial Court's dismissal without prejudice of the Adoption Petition violated Indiana Trial Rule 41(A)(2) and requested the Trial Court vacate its order. After a hearing on the matter, on April 2, 2024, the Trial Court granted Father's motion, set aside its order dismissing the Adoption Petition, and denied Stepfather's motion to transfer the Paternity Petition to Hamilton County.[4]

[10] On May 13, 2024, the Trial Court granted Stepfather leave to amend his Adoption Petition to include that Father knowingly failed to provide for the care and support of Child when able to do so. After an evidentiary hearing, the Trial Court ordered that Father's consent to the adoption of Child was required because Father did not unjustifiably fail to communicate with Child and he did not fail to provide for her care and support for a period of at least one year. As Father had not agreed to the adoption, the Trial Court denied Stepfather's Adoption Petition. Stepfather appeals.

---

[4] The Hamilton County court had deferred ruling on Stepfather's motions until the Trial Court entered its order on Father's motion to correct error.

## Discussion and Decision

## 1. Dismissal Without Prejudice

Stepfather claims that the Trial Court erroneously reinstated his Adoption Petition after dismissing the petition without prejudice pursuant to Indiana Trial Rule 41 because it forced him to litigate the Adoption Petition in Fulton County and not in his preferred venue of Hamilton County.

Indiana Trial Rule 41(F) addresses the reinstatement of an action following a dismissal. Specifically, the subsection spells out what conditions must be met when a party seeks relief following a dismissal and states, in relevant part:

> **(F) Reinstatement Following Dismissal.** For good cause shown and within a reasonable time the court may set aside a dismissal without prejudice.

"We review this ruling for an abuse of discretion." *Smith v. Franklin Township Community School Corp.*, 151 N.E.3d 271, 273 (Ind. 2020). "An abuse of discretion occurs when the decision misinterprets the law or clearly contravenes the logic and effect of the facts and circumstances before the court." *Id*.

We conclude both requirements for reinstatement of Stepfather's Adoption Petition are met. First, the reasonable time requirement is satisfied as the Trial Court ordered reinstatement of Stepfather's Adoption Petition within two months of dismissing it without prejudice.

[15] Second, with respect to the good cause requirement, the Trial Court noted that it erred in granting Stepfather's motion to dismiss because his motion did not satisfy the requirements of Indiana Trial Rule 41(A).[5] The first subsection of the trial rule provides that a plaintiff may dismiss his action without order of the court by "filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment[.]" Ind. T.R. 41(A)(1)(a). While paternity and adoption actions do not typically include answers or summary judgment motions, we find that Father's notice contesting the Adoption Petition, filed on August 28, 2023, is sufficient to prevent Stepfather from voluntarily dismissing the action without a court order under Trial Rule 41(A)(1). *See Sevilla v. Lopez*, 150 N.E.3d 683, 686 n.3 (Ind. Ct. App. 2020) ("[P]aternity causes do not generally include answers or summary judgment motions, but we find that the Grandparents' intervention and motion

---

[5] Indiana Trial Rule 41(A) provides, in relevant part,

**(A) Voluntary Dismissal: Effect Thereof**

(1) *By Plaintiff--By Stipulation.* Subject to contrary provisions of these rules or of any statute, an action may be dismissed by the plaintiff without order of court:

(a) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever first occurs[.]

. . .

(2) *By Order of Court.* Except as provided in subsection (1) of this subdivision of this rule, an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper.

for visitation sufficed to make them a part of the case such that Mother could not voluntarily dismiss the action without a court order[.]"), *trans. denied*.

[16] Pursuant to Indiana Trial Rule 41(A)(2), the Trial Court may enter an order dismissing the Adoption Petition at Stepfather's request "upon such terms and conditions as the court deems proper." "The purpose of this rule is 'to eliminate evils resulting from the absolute right of a plaintiff to take a voluntary nonsuit at any stage in the proceedings before the pronouncement of judgment and after the defendant had incurred substantial expense or acquired substantial rights.'" *Id.* (quoting *Rose v. Rose*, 526 N.E.2d 231, 234 (Ind. Ct. App. 1988), *trans. denied*). "Generally, dismissals should be permitted 'unless the defendant will suffer some legal prejudice other than the mere prospect of a second lawsuit.'" *Id*. (quoting *Rose*, 526 N.E. 2d 234).

[17] Although case law does not precisely define 'legal prejudice,' legal prejudice has been found when actual legal rights are threatened or when monetary or other burdens appear to be extreme or unreasonable.

> [T]he factors most commonly considered on a motion for a voluntary dismissal are: (1) the extent to which the suit has progressed, including the defendant's effort and expense in preparing for trial, (2) the plaintiff's diligence in prosecuting the action or in bringing the motion, (3) the duplicative expense of relitigation, and (4) the adequacy of plaintiff's explanation for the need to dismiss. Other factors that have been cited include whether the motion is made after the defendant has made a dispositive motion or at some other critical juncture in the case and any vexatious conduct or bad faith on plaintiff's part.

*Principal Life Ins. Co. v. Needler*, 816 N.E.2d 499, 503 (Ind. Ct. App. 2004) (quoting 8 *Moore's Federal Practice* § 41.40[6], pp. 41-140—41-142 (3d ed.2003)). "This list of considerations is not exhaustive." *Id.*

[18] The record reflects that by the time Stepfather filed his motion to dismiss, eight months after consolidation of the Paternity and Adoption Petitions, extensive discovery had taken place. The parties had served and answered interrogatories and requests for production, had scheduled and served subpoenas for depositions, and had prepared for the hearing on Father's consent in the Adoption case, which was scheduled to take place the day after Stepfather moved to dismiss. To permit Stepfather to dismiss the Adoption Petition at the eleventh hour—one day before the hearing—only to refile a day later and relitigate the Cause in a different venue, would unnecessarily extend litigation in two child-related causes, exposing Father to duplicative litigation and significant expense thwarting the purpose of Trial Rule 41(A)(2).

[19] Stepfather also argues that Father cannot be prejudiced by the subsequent filing of the Adoption Petition in Hamilton County because the new venue is supported as a preferred venue under Indiana Code section 31-19-2-2(a).[6]

---

[6] Indiana Code section 31-19-2-2(a) states, in relevant part, that:

> [A]n individual who seeks to adopt a child less than eighteen (18) years of age must . . . file a petition for adoption with the clerk of the court having probate jurisdiction in the county in which:
>
> (1) the petitioner for adoption resides;

While the statute authorizes the filing of the Adoption Petition in Hamilton County because it is the location of Stepfather's new attorney, the Trial Court is likewise considered a preferred venue because Stepfather and Child both reside in Fulton County. *See* Ind. Code § 31-19-2-2(a)(1),(3)-(4). Since the listing of preferred venues is presented in a disjunctive manner, with no venue favored over another, the Trial Court correctly retained jurisdiction.

[20] Finding both requirements to reinstate a dismissal under Trial Rule 41(F) met, the Trial Court did not abuse its discretion when it reinstated Stepfather's Adoption Petition.

## 2. Father's Consent

[21] Our Supreme Court has held, "[a] natural parent enjoys special protection in any adoption proceeding," and we "strictly construe our adoption statutes to preserve the fundamentally important parent-child relationship." *Matter of Adoption of I.B.*, 163 N.E.3d 270, 274 (Ind. 2021). Generally,

> a petition to adopt a child who is less than eighteen (18) years of age may be granted only if written consent to adoption has been executed by . . . [t]he mother of a child born out of wedlock and

---

(2) a licensed child placing agency or governmental agency having custody of the child is located;

(3) the attorney maintains an office; or

(4) the child resides.

the biological father of the child if the father's paternity[7] has been established[.]

Ind. Code § 31-19-9-1(a)(2). "[U]nder carefully enumerated circumstances," however, the adoption statutes allow "the trial court to dispense with parental consent and allow adoption of the child." *I.B.*, 163 N.E.3d at 274 (citing Ind. Code Ch. 31-19-9). Two of the enumerated circumstances are relevant here. Specifically, Stepfather asserts that Father's consent to the adoption of Child was unnecessary because Father has for a period of at least one year (1) unjustifiably failed to communicate significantly with Child when able to do so or (2) has failed to provide for the care and support of Child when able to do so. *See* I.C. § 31-19-9-8(a)(2)(A)-(B).

[22] The parent-child relationship is "an important interest warranting deference and protection[.]" *In re C.G.*, 954 N.E.2d 910, 917 (Ind. 2011). Accordingly, a finding that parental consent is necessary for an adoption petition is not lightly reversed. On appeal, "the appellant bears the burden of overcoming the presumption that the trial court's decision is correct." *In re Adoption of S.W.*, 979 N.E.2d 633, 639 (Ind. Ct. App. 2012). We neither reweigh the evidence nor judge the credibility of witnesses. *Id.* We consider all evidence and their

---

[7] Although Father had petitioned the Trial Court to establish paternity, no ruling had been issued by the time Stepfather filed his Adoption Petition. Stepfather never challenged Father's paternity and essentially admitted Father was Child's biological parent by acknowledging in the Adoption Petition that "there is no dispute that [Father] is [Child's] father." *Appellant's App. Vol. 2* at 26.

reasonable inferences in the light most favorable to sustaining the trial court's decision. *Id.* "We will not disturb the trial court's ruling unless the evidence leads to only one conclusion and [the court] reached an opposite conclusion." *Id.*

[23] Before starting our analysis, we note that Father did not file an appellee's brief. "[W]here, as here, the appellee[] do[es] not submit a brief on appeal, the appellate court need not develop an argument for the appellee[] but instead will 'reverse the trial court's judgment if the appellant's brief presents a case of prima facie error.'" *Salyer v. Washington Regular Baptist Church Cemetery*, 141 N.E.3d 384, 386 (Ind. 2020) (quoting *Front Row Motors, LLC v. Jones*, 5 N.E.3d 753, 758 (Ind. 2014)). "Prima facie error in this context means 'at first sight, on first appearance, or on the face of it.'" *Id.* (quoting *Front Row Motors, LLC*, 5 N.E.3d at 758). This less stringent standard of review "relieves [us] of the burden of controverting arguments advanced in favor of reversal where that burden properly rests with the appellee." *Jenkins v. Jenkins*, 17 N.E.3d 350, 352 (Ind. Ct. App. 2014). We are obligated, however, to correctly apply the law to the facts in the record to determine whether reversal is required. *Id.*

### A. Communication

[24] Stepfather claims that Mother took reasonable steps to encourage communication between Child and Father by making a single offer of parenting time to be exercised at Mother's parents' residence. Stepfather points to Father's rejection of Mother's offer as evidence that Father made no actual

effort to communicate with his Child. *See* I.C. § 31-19-9-8(a)(2)(A). We disagree. Mother's single offer of parenting time, made while the parties were engaged in a litigious battle over their former shared residence and which was to be exercised in the home of Mother's parents who were hostile to Father, cannot be considered a reasonable step to balance the multiple and persistent requests Father made to see Child and which went unanswered by Mother.

Father testified that he contacted Mother on May 6 and 7, 2022, asking to spend time with the one-year-old Child after seeing her for the last time the previous month. On May 8, 2022, he reached out to Mother, offering to meet her halfway between their respective residences to pick up Child. Father again asked to see Child on May 17, 2022, after he purchased a car seat at Mother's request. On June 27, 2022, Father renewed his request to see Child, and on July 7, 2022, he asked Mother to email him pictures of Child.

In March 2023, Father again reached out to Mother multiple times to request parenting time with Child. On March 1, 2023, Father emailed Mother, "[i]t has been almost 11 months since I have seen my daughter. Since then you have refused to communicate with me about our daughter[.]" *Ex.* at 53. Father sent another email the next day, as well as on Child's second birthday a month later. Father continued his quest to see Child with emails to Mother on June 25, 2023 and June 30, 2023, insisting she stop ignoring him. On July 15, 2023, immediately prior to filing his Paternity Petition, Father accused Mother of parental alienation. Father's requests to see Child and his emails attempting to

"engage [Mother] in emotional banter back and forth" were greeted with silence. *Tr.* at 66. Unless Father presented Mother with a definite plan to exercise parenting time, Mother refused to answer any of Father's requests to see or speak with Child.

[27] A custodial parent's efforts to thwart communication between the non-custodial parent and the child are relevant to determining the non-custodial parent's ability to communicate and should be weighed in the non-custodial parent's favor. *E.W. v. J.W.*, 20 N.E.3d 889, 896-97 (Ind. Ct. App. 2014), *trans. denied*. Therefore, based on the totality of the evidence considered in the light most favorable to the trial court's decision and given our deferential review, the trial court correctly concluded that Father had justifiable cause when he failed to communicate with Child.

## B. Care and Support

[28] Determination of the parent's ability to provide care and support is based on the totality of the circumstances. *In re Adoption of J.L.J.*, 4 N.E.3d 1189, 1195 (Ind. Ct. App. 2014), *trans. denied.* The person seeking to adopt must provide evidence of the parent's income and expenses to prove refusal to support. *In re Adoption of Augustyniak*, 508 N.E.2d 1307, 1308 (Ind. Ct. App. 1987), *reh'g denied, trans. denied.* "'[T]he relevant time period' for determining whether a non-custodial parent has supported his or her child, 'is not limited to either the year preceding the hearing or the year preceding the petition for adoption, but is any year in which the parent had an obligation and the ability to provide

support, but failed to do so.'" *In re Adoption of M.S.*, 10 N.E.3d 1272, 1279 (Ind. Ct. App. 2014) (quoting *In re Adoption of J.T.A.*, 988 N.E.2d 1250, 1255 (Ind. Ct. App. 2013), *reh'g denied, trans. denied*).

[29] "It is well-settled that parents have a common law duty to support their children," and this duty exists independently of any court order or statute. *Boone v. Boone*, 924 N.E.2d 649, 652 (Ind. Ct. App. 2010). Consequently, even though no court order to pay child support existed, Father still had a duty to support Child.

[30] The evidence of Father's ability to pay was established directly from Father's own testimony and included specific information about his income. Father testified he was a stay-at-home father who cared for Child until the parties separated in the spring of 2022. He was unemployed until September 2022 when he found a position with Hartford Insurance Group, making about $13,000 in 2022 and $54,907 in 2023. After the separation and until he received his first paycheck in October 2022, Father paid for his living expenses by credit card. Besides a cell phone bill and the occasional $15 vape, Stepfather failed to elicit any specific monetary testimony about Father's necessary and reasonable living expenses.

[31] Father's available income must be viewed in light of his debts. Between May 2022 and March 2023, Father spent over $9,000 in attorney fees and litigation expenses to defend his share in the partition of the joint residence. He started to

pay off these expenses and his credited living expenses after he became employed in September 2022. Father received $47,469.60 in partition funds in April 2023 and in June 2023, Father consulted and paid a retainer for an attorney to proceed with his Paternity Petition.

[32] Stepfather now characterizes these partition funds as disposable income Father should have used to financially support his Child. While Father did not challenge this claim during his testimony, Father explained that after these funds were deposited in his bank account in April 2023, "within sixty days [Father] had secured an attorney and filed for paternity" to establish child support. *Tr.* at 50. Father testified—and the trial court found credible—that he was willing to "[b]asically immediately" pay any arrearage in child support. *Tr.* at 51. Yet two days before the hearing on the Paternity Petition, after which a support order would have been issued, Stepfather petitioned for adoption. The Trial Court consolidated both Petitions and canceled the hearing on Father's Paternity Petition. To date, no hearing has been held in the Paternity action and no support docket has been created for Father to submit child support. A determination of child support would have been made by now but for the numerous delays instigated by Stepfather.

[33] We hold that the Trial Court did not clearly err when, after considering the totality of the circumstances and finding Father's testimony to be credible, it determined that Stepfather did not establish, by clear and convincing evidence, that Father had failed to support Child when able to do so.

## Conclusion

[34] The Trial Court correctly reinstated Stepfather's Adoption Petition. Based on the facts before us, we cannot conclude that Stepfather met his burden to overcome the presumption that the trial court correctly decided that Father's consent was necessary for Child's adoption. Because Father did not consent to the adoption, we affirm the trial court's ruling denying Stepfather's Adoption Petition.

[35] Affirmed.

May, J., concurs. Tavitas, J., concurs with separate opinion.

ATTORNEYS FOR APPELLANT

C. Matthew Zentz
Zentz & Roberts, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEE

Braden J. Dean
Hillis, Hillis, Rozzi & Dean
Logansport, Indiana

**Tavitas, Judge, concurring.**

[36] I fully concur in the decision reached by the majority. I write separately to point out the procedural irregularities in this case that conformed to neither Trial Rule 42, which governs the consolidation of proceedings, nor the statutory requirements to advance paternity proceedings when a petition for adoption has been filed.

[37] In this case, the trial court consolidated the adoption and paternity matter into the adoption cause number. *See* Indiana Trial Rule 42(A) (providing that a trial court may consolidate actions "involving a common question of law or fact"). The trial court, however, then dismissed the petition for adoption but not the paternity matter, which continued to pend under the adoption cause number. Matters are to be consolidated for hearing purposes under their separate cause numbers. *See Clarkson v. Neff*, 878 N.E.2d 240, 245-46 (Ind. Ct. App. 2007) ("'[C]onsolidation of similar cases is permitted as a matter of convenience and economy, but, it does not merge the suits into a single cause or change the rights or duties of the parties.'") (quoting *Gray v. Westinghouse Elec. Corp.*, 624 N.E.2d 49, 55 (Ind. Ct. App. 1993)), *trans. denied*. Good reason exists for this, as is evident from this case. The paternity action was consolidated into the adoption case, but it then fell through the cracks.

[38] Furthermore, the trial court was required to expedite paternity proceedings due to the pending adoption, which the trial court failed to do. The statutes listing

the requirements for expedited paternity hearings serve the important purpose of ensuring putative fathers can protect their rights. Specifically, Indiana Code Section 31-14-21-9 provides that:

> (a) Except as provided under section 13[8] of this chapter and subject to IC 31-19-2-14,[9] if a court presiding over a paternity action under this article knows of:
>
>> (1) a pending adoption of a child who is the subject of the paternity action; and
>>
>> (2) the court in which the adoption is pending;
>
> the court having jurisdiction over the paternity action **shall** establish a child's paternity within the period prescribed by this chapter.
>
> (b) Except as provided under section 13 of this chapter and subject to IC 31-19-2-14, the court shall conduct an initial hearing not more than thirty (30) days after:
>
>> (1) the filing of the paternity petition; or
>>
>> (2) the birth of the child;

---

[8] This section provides:

> Upon notice that a court in which an adoption is pending has assumed jurisdiction of a paternity action under IC 31-19-2-14, the court in which the paternity action was pending shall stay all proceedings in the paternity action until further order from the court in which the adoption is pending.

Ind. Code § 31-14-21-13. Thus, when an adoption court has assumed jurisdiction over the paternity matter, the paternity court must stay proceedings in the original paternity action.

[9] This section is discussed *infra*.

whichever occurs later.

(emphasis added).

[39] Thus, a trial court presiding over a paternity action must generally establish the child's paternity within an expedited time frame if the trial court becomes aware of a pending adoption action involving the child. *Id*. § 9(a). Among the expedited actions the paternity court must take in these circumstances is to hold an initial hearing within thirty days of the filing of the paternity action or the birth of the child, whichever occurs later. *Id*. § 9(b). Then, under Indiana Code Section 31-14-21-9.2, the trial court, subject to the same conditions as in Section 9, "**shall** conduct a final hearing to determine paternity" "not later than ninety (90) days after the initial hearing[.]" (emphasis added). And the paternity court "**shall** issue its ruling in the paternity action" "no later than fourteen (14) days after the final hearing[.]" *Id*. (emphasis added).

[40] Indiana Code Section 31-19-2-14(a), to which both Sections 9 and 9.2 are subject, provides:

> If a petition for adoption and a paternity action are pending at the same time for a child sought to be adopted, the court in which the petition for adoption has been filed has exclusive jurisdiction over the child, and the paternity proceeding **must** be consolidated with the adoption proceeding.

Accordingly, if both a paternity action and an adoption action that involve the same child are pending at the same time, the adoption court has exclusive

jurisdiction over the child and the paternity action must be consolidated with the adoption action, but not into a single cause number.

[41] Clearly, the purpose of these statutes is to require a quick ruling in a paternity action when there is also an adoption action pending that involves the same child. The determination of paternity allows the putative father of the child to assert his rights in the adoption action. And requiring the paternity case to be consolidated with the adoption case allows the trial court to track both proceedings and avoid the danger of potential contradictory rulings by different courts.

[42] Here, however, instead of quickly adjudicating paternity, the issue was repeatedly delayed. The result is that, although the paternity petition was filed before the adoption petition, the trial court has yet to rule on the paternity petition. Thus, rather than expediting the paternity matter, the exact opposite happened. By the time the trial court ruled on the adoption petition, over one year had elapsed since Father filed his paternity petition.

[43] I encourage trial courts to be mindful of the statutory time limits that must be met when ruling on paternity petitions in cases where an adoption petition has also been filed involving the same child. With these observations, I concur in the decision reached by the majority.