**KNIGHTSTOWN BANNER, LLC,**
Appellant–Cross Appellee–
Plaintiff,

v.

**TOWN OF KNIGHTSTOWN,** Governmental Insurance Managers, Inc., and Governmental Interinsurance Exchange, Appellees–Cross Appellants–Defendants.

No. 33A05–0705–CV–239.

Court of Appeals of Indiana.

March 14, 2008.

Kurt A. Webber, Kurt A. Webber, P.C., Carmel, IN, Attorney for Appellant, Knights Town Banner, LLC.

David L. Copenhaver, Joel E. Harvey, Hayes Copenhaver Crider, LLP, New Castle, IN, Attorneys for Appellee, Town of Knightstown.

Stephen J. Peters, Harrison & Moberly, LLP, Indianapolis, IN, Steven D. Pearson,

Meckler Bulger & Tilson, LLP, Chicago, IL, Attorneys for Appellees, Governmental Insurance Managers, Inc. and Governmental Interinsurance Exchange.

## OPINION

FRIEDLANDER, Judge.

This is the second time this lawsuit between Knightstown Banner, LLC (the Newspaper) on one side and Town of Knightstown (the Town), Governmental Insurance Managers, Inc. (GIM), and Governmental Interinsurance Exchange (GIE) on the other has come before us. In this appeal, the Newspaper presents the following restated issues for review:

1. Did the trial court err in denying the Newspaper's motion for summary judgment and instead permitting the Town to dismiss its counterclaim for attorney fees?

2. Did the trial court err in determining the amount of the Newspaper's attorney fees award?

3. Did the trial court abuse its discretion in denying the Newspaper's motion for change of judge?

We affirm in part, reverse in part, and remand with instructions.

As indicated above, this is the second time this lawsuit has come before this court. We set out the underlying facts in the first opinion (*Knightstown I*) as follows:

This case arises out of three separate requests from the Banner to Knightstown, GIM, and GIE, each seeking to inspect and copy a settlement agreement that resolved a civil rights lawsuit filed on November 25, 2002 in the United States District Court for the Southern District of Indiana, by Gigi Steinwachs (Steinwachs) against Knightstown, members of its police de-

partment, and other third parties. In her lawsuit, Steinwachs alleged sexual harassment, physical assault, and intimidation during her employment as a dispatcher with the Knightstown police department. Besides Knightstown's regular town counsel (Regular Town Counsel), an attorney retained by Knightstown's reciprocal insurer, GIE (Retained Town Counsel), also participated in the civil rights lawsuit.

GIE is a reciprocal insurer organized under the laws of Illinois, and authorized to conduct insurance business in Indiana. It is a reciprocal interinsurance program whereby governmental entities enter into contracts of indemnity with each other through their common attorney-in-fact, GIM. GIE's insureds, known as subscribers, are exclusively local governmental entities, of which seventy-three percent are located in Indiana. At the time of the initiation of the civil rights lawsuit, Knightstown was insured by GIE. Under the terms of the policy, GIM, as the appointed true and lawful attorney of [Knightstown], had the right to

> pay those sums that [Knightstown] becomes legally obligated to pay as "damages" because of injury caused by "Designated Wrongful Employment Practices": to which this Coverage Part applies. [GIM] will have the rights and duty to defend any insured against a "suit" seeking these damages from [Knightstown], and [GIM] will have the right to administer, manage, and control the defense of [Knightstown] ... [GIM] may at our discretion investigate any "occurrence" and settle, in whole or in part, any "claim" or "suit" that may result.

On October 21, 2003, Steinwachs, individually and through counsel, and Knightstown, through Regular Town Counsel and Retained Town Counsel,

resolved the civil rights lawsuit in a settlement conference. Following the conference, the district court ordered the filing of a motion to dismiss or stipulation of dismissal within thirty days because of the settlement between the parties. Pursuant to the terms of the settlement, Knightstown was to directly pay Steinwachs $5,000.00 in partial payment of the agreed compensation. However, the Town Council President refused to further discuss the terms of the settlement because of a confidentiality provision which would result in additional compensation for Steinwachs if breached.

On or about November 13, 2003, Steinwachs filed a motion to extend the time to file a stipulation of dismissal in the civil rights lawsuit. On or about November 18, 2003, the district court granted Steinwachs' motion and extended the time to file the stipulation until "ten days after receipt of remaining funds." Thereafter, on or about December 9, 2003, Steinwachs' counsel and Retained Town Counsel filed a stipulation to dismiss. That same day, the district court dismissed the civil rights lawsuit without sealing the settlement agreement.

On October 29, 2003, pursuant to APRA, the Banner submitted its first request to Knightstown seeking to inspect a copy of the settlement agreement. Approximately two weeks later, on November 10, 2003, the Banner submitted identical requests to Knightstown and GIE to receive a copy of the settlement agreement, or in the alternative in the event the settlement was not reduced to writing, "complete copies of any and all documents which reveal the amount of money either already paid or to be paid to [Steinwachs] ... as well as any and all documents which set forth

any nonmonetary terms and conditions of the settlement agreement." Both Knightstown and GIE denied the request.

On May 21, 2004, the Banner filed a Verified Complaint against Knightstown, GIE, and GIM alleging a violation of APRA, a violation of the common law right to inspect public records, and a violation of article I, §§ 1 and 9 of the Indiana Constitution. On January 14, 2005, the Banner filed its Motion for Summary Judgment on All Counts of the Complaint. Thereafter, on February 16, 2005, Knightstown, GIE, and GIM filed cross-motions for summary judgment. On April 6, 2005, after a hearing, the trial court denied Banner's motion for summary judgment but granted Knightstown's, GIE's, and GIM's cross-motions for summary judgment.

*Knightstown Banner, LLC v. Town of Knightstown,* 838 N.E.2d 1127, 1128–1130 (Ind.Ct.App.2005) (internal citations omitted), *trans. denied.*

To summarize, *Knightstown I* involved a demand by the Newspaper under Indiana Access to Public Records Act (APRA) to view the settlement agreement between the Town and a former employee in a lawsuit filed by the employee alleging sexual harassment, physical assault, and intimidation. The trial court determined that the settlement agreement was not a public record and thus the Town was not required by APRA to produce it. We reversed that determination and held that the settlement agreement is a public record under APRA. We remanded to the trial court with instructions to order the Town to deliver to the Newspaper a copy of the settlement agreement.

On June 16, 2005, after notice of appeal was filed in *Knightstown I*, GIE and GIM filed a motion for costs and attorney fees on the basis that the Newspaper's lawsuit was frivolous. The Town also filed its own motion for attorney fees. Ruling on the attorney fees issue was deferred pending the conclusion of the appeal. *Knightstown I* was handed down on December 13, 2005. Two days later, on December 15, the Newspaper submitted a motion for change of judge pursuant to Trial Rule 76(C)(3). That motion was granted on December 20, 2005. On December 23, 2005, the Town, GIE, and GIM filed motions to reconsider the granting of the motion for change of judge, arguing that the motion was premature under Indiana Appellate Rule 65(E) (i.e., it was filed before the opinion in *Knightstown I* was certified). On August 8, 2006, following a hearing, the trial court vacated its earlier order granting a change of judge and determined that, under Ind. Code Ann. § 5–14–3–9(i) (West, PREMISE through 2007 1st Regular Sess.), the Newspaper would not be entitled to a change of judge should a timely motion to that effect be filed.

On December 12, 2006, the Newspaper filed a motion for summary judgment with respect to the Town's and GIE and GIM's requests for attorney fees and costs. On or about January 5, 2007, the Town submitted a response to the Newspaper's motion for summary judgment, seeking permission to dismiss its claim for attorney fees because, in light of our decision in *Knightstown I*, the matter would be decided in the Newspaper's favor and "to litigate this issue further would result in the Town incurring unnecessary and unproductive legal expenses." *Appellant's Appendix* at 262. The Newspaper opposed the Town's motion to dismiss, arguing that the claim should be denied on its merits "to avoid the expense and uncertainty of relitigating Town's claim in the future." *Id.* at 266. A hearing was conducted on all pending motions on February 27, 2007.

On March 29, 2007, the trial court issued the orders herein appealed. Relative to the issues now before us, the court permitted the Town to withdraw its request for attorney fees, denied GIE and GIM's request for attorney fees because they did not prevail on appeal, and granted the Newspaper's request for costs and attorney fees in the amount of $67,612.46.

1.

█ The Newspaper frames the first issue as a claim the trial court erred in denying its motion for summary judgment with respect to the Town's counterclaim for attorney fees. In fact, the trial court did not rule on that motion. Instead, it granted the Town's motion to dismiss its counterclaim. Thus, we agree with the Town that the issue, properly framed, is whether the trial court erred in permitting the Town to withdraw its counterclaim for attorney fees.

█ Indiana Trial Rule 41(A)(2) governs motions to dismiss such as the one before us. That rule states, in pertinent part:

Except as provided in subsection (1) of this subdivision of this rule, an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper. If a counterclaim or cross-claim has been pleaded by a defendant prior to the service upon him of the plaintiff's motion to dismiss, the action shall not be dismissed against the defendant's objection unless the counterclaim or cross-claim can remain pending for independent adjudication by the court. Unless otherwise specified in the order, a dismissal under this subsection is without prejudice.

This rule permits a claimant to voluntarily dismiss a claim after a motion for summary judgment has been filed, but only pursuant to court order. The test for determining whether a voluntary dismissal is proper is whether the opposing party would be substantially prejudiced by dismissal. *Principal Life Ins. Co. v. Needler,* 816 N.E.2d 499 (Ind.Ct.App.2004). Dismissals should generally be allowed unless the defendant will suffer legal prejudice, other than the mere prospect of a second lawsuit. *Id.* Concerning the assessment of legal prejudice, we have observed,

[T]he factors most commonly considered on a motion for a voluntary dismissal are: (1) the extent to which the suit has progressed, including the defendant's effort and expense in preparing for trial, (2) the plaintiff's diligence in prosecuting the action or in bringing the motion, (3) the duplicative expense of relitigation, and (4) the adequacy of plaintiff's explanation for the need to dismiss. Other factors that have been cited include whether the motion is made after the defendant has made a dispositive motion or at some other critical juncture in the case and any vexatious conduct or bad faith on plaintiff's part.

*Id.* at 503 (quoting 8 Moore's Federal Practice § 41.40[6] at pp. 41–140–41–142 (3d ed.2003) (discussing Rule 41(a)(2), the substantially similar counterpart to T.R. 41(A) in the Federal Rules of Civil Procedure)).

In this case, the Newspaper's primary argument opposing dismissal is that the Town could reassert the same claim at a later time. Thus, the Newspaper seeks summary judgment (or, as the Newspaper phrases it, "the protective cloak of a judgment on the merits") on the Town's claim for attorney fees in order to foreclose the possibility of having to litigate the same issue at a later date. *Appellant's Brief* at 8. We are satisfied after reviewing the appellate materials that the Town would not be able to do so. We draw this conclusion because of the nature of the dismissal

granted by the court. The Town concedes that its claim for attorney fees was dismissed with prejudice. We agree.

At the June 16, 2007 hearing on the Town's motion to dismiss, the following discussion occurred:

> Court: And I have orders here for you, at least on the two issues. I'm going to make an entry on the dismissal of [the Town's] Counterclaim unless you guys want a more formal written order than that.
>
> [the Newspaper's counsel]: Is that going to be done with prejudice, Your Honor, so that it's really done done?
>
> Court: It's done, done, yes. Then I'll do an entry as to these other times and deadlines that were agreed upon. Okay, that's it for today.

*Supplemental Transcript* at 11. Although the docket entry recording that decision states only, "Town's Motion to Dismiss Counterclaim GRANTED", the trial court clearly intended that its order to dismiss be with prejudice. *Appellant's Appendix* at 25. We, therefore, deem the dismissal to be with prejudice.[1]

As a result, because the Newspaper was not substantially prejudiced by the voluntary dismissal of the Town's counterclaim, the trial court did not err in doing so. *See Principal Life Ins. Co. v. Needler*, 816 N.E.2d 499.

**2.**

The Newspaper contends the trial court erred in determining the amount of the Newspaper's attorney fees award.

 The trial court entered findings and conclusions pursuant to the Newspaper's Trial Rule 52 request. When a trial court enters special findings under this rule "[w]e will not set aside such findings unless clearly erroneous and [will] give due regard to the opportunity of the trial court to judge the credibility of the witnesses." *Augspurger v. Hudson*, 802 N.E.2d 503, 508 (Ind.Ct.App.2004) (quoting *Cannon v. Cannon*, 758 N.E.2d 524, 526 (Ind.2001)). For this reason, when reviewing the trial court's entry of special findings, we neither reweigh the evidence nor reassess witness credibility. *Augspurger v. Hudson*, 802 N.E.2d 503. We review the amount of an award of attorney fees under an abuse of discretion standard. *Brademas v. South Bend Cmty. Sch. Corp.*, 783 N.E.2d 745 (Ind.Ct.App.2003), *trans. denied.* An abuse of discretion occurs when the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the court has misinterpreted the law. *Id.*

 In its order awarding attorney fees, the trial court issued the following findings of fact and conclusions of law:

---

**1.** In so holding, we reject the Newspaper's claim in its Appellant/Cross–Appellee/Plaintiff Knightstown Banner, LLC's Reply and Cross–Appellee Brief that *McElroy v. State*, 865 N.E.2d 584 (Ind.2007) and *Brimhall v. Brewster*, 835 N.E.2d 593 (Ind.Ct.App.2005), *trans. denied*, support the opposite result. In *McElroy*, our Supreme Court "examine[d] [the oral comments] alongside the written sentencing statement to assess the conclusions of the trial court." 865 N.E.2d at 589. In so doing, the court noted that its consideration of the oral sentencing statement was "different from pronouncing a bright line rule that an oral sentencing statement trumps a written one." *Id.*

We observe that it was also different from saying the oral statement was inconsequential. The Newspaper further cites *Brimhall* and Trial Rule 41 (as well as multiple federal appellate cases from circuits other than the Seventh Circuit) in support of the argument that "[o]rders that fail to explicitly state that dismissal is with prejudice are interpreted as being without prejudice regardless of any implied judicial intent." *Appellant/Cross–Appellee/Plaintiff Knightstown Banner, LLC's Reply and Cross Appellee Brief* at 10. In fact, *Brimhall* discusses subsections (B) and (E) of T.R. 41, which clearly do not apply in this case.

3. The Plaintiff seeks attorney fees and costs in the amount of $188,095.64. The Plaintiff seeks to have the court apply an extraordinary multiplier of 1.5 citing the complexity of the case, the "overwhelming success" and a furtherance of the public interest as well as other factors. The Court declines to award a multiplier and applies a lodestar method.[2]

4. The parties have vigorously disputed every aspect of this case since its inception. The parties have disputed the reasonable hourly rate to be applied, the number of hours spent at each stage, depositions, affidavits, motions to compel, motions to comply with trial rules, petitions for rehearing, motions for change of judge, bifurcation issues and mediation and filed numerous responses and replies. The Court finds that this contentious nature of practice has substantially and needlessly increased the attorney fees and costs of this litigation to an unreasonable amount.

5. The fee shifting provision of APRA provides for the award of *reasonable* attorney fees, costs and expenses. The award of attorney fees in the State of Indiana has never amounted to a "blank check" for the prevailing party and the court [sic] hereby finds that the Plaintiff's requested fees should be reduced despite Plaintiff Banner's assertion that the small rural Town of Knightstown can merely assess a levy to cover the attorney fees they are ordere [sic] to pay.

6. The award of reasonable attorney fees is a subjective matter and would result in as many different results as hearing officers issuing an opinion. The Court hereby considers those factors set forth in the Rules of Professional Conduct, 1.5. in reaching an attorney fee award including the time and labor *required* (emphasis added); fee customarily charged in the locality for similar services; the amount involved and the results obtained.

7. The Plaintiff has requested attorney fees and costs in the amount of $125,397.09 before adding a multiplier. The Court finds that these fees should be reduced by those contested attorney fees designated in Defendant GIE and GIM/GIM's designation of evidence (Tabs 4–12) which can be attributable to unreasonable, excessive and unrelated fees, or more specifically unsuccessful claims; unallocated time entries related to unsuccessful claims, unsuccessful APRA claims, unintelligible time entries, time entries relating to the Anti–SLAPP motion, the motion to compel and motion for rule compliance, motion to disqualify counsel, response to petition for rehearing and untimely change of judge motions.

8. Following the opinion of the Public Access Counselor, the competing legal issues were defined at the trial court level and were pursued at the appellate level. The Court declines to find that this was a matter of first impression. In fact, the testimony of Plaintiff's witnesses at hearing set forth the historical efforts made to seek confidential agreements by the press. Given the growing body of law in foreign jurisdiction, despite the opinion of the Public Access Counselor, it was acknowledged early on that this issue would be determined at the appellate level.

9. Attorney Brian Babb testified on behalf of the Plaintiff regarding the na-

2. Under this method, the number of hours reasonably devoted to this case is multiplied by a reasonable hourly fee.

ture of the appellate proceedings. He conceded that the appellate matter was atypical involving an unsolicited oral argument, petitions for rehearing and petitions for transfer. Attorney Babb testified that reasonable appellate attorney fees in an atypical appeal with oral argument would be in the amount of $35,000–$40,000 but in this case were higher. The Court finds that the fees were higher in this case not merely because of complexity but because of the contentious nature of counsel.

10. The parties disputed the reasonable hourly rate to be applied herein. Defendant Town of Knightstown, represented by the only local counsel, advocate an hourly rate of $150–175 as customary in the community. Defendants GIE and GIM/GIM, represented by counsel from larger urban areas, propose an hourly rate of $185.00. The Court finds that this is a reasonable hourly rate to be applied herein.

11. The Court hereby finds that reasonable attorney fees, costs and expenses of litigation should be awarded to Plaintiff Knightstown Banner as follows:

| | |
|---|---:|
| Requested Plaintiff attorney fees and costs without multiplier | $125,397.09 |
| Less: | |
| Unsuccessful claims | 17,132.97 |
| Unallocated entries to unsuccessful claims | 15,840.22 |
| Unallocated entries to unsuccessful APRA claim | 2,627.74 |
| Unintelligible time entries | 14,164.00 |
| Time entries for Anti–SLAPP motion | 6,470.70 |
| Motion to Compel and Direct Rule Compliance entries | 3,163.50 |
| Motion to Disqualify time entries | 3,256.00 |
| Response to Petition for Rehearing | 5,069.00 |
| Motion for Change of Judge | 2,460.50 |

12. The Court finds that this will result in a total award which is reasonable under an hourly rate of $185.00 allowing for atypical appellate attorney fees in the amount of $40,000.00 and trial level attorney fees in the amount of $27,612.46 which is comparable to the attorney fees of the local counsel.

13. The Court finds that the Defendants Town of Knightstown, GIE, and GIM were necessary parties to the suit and are jointly and severally liable for the award of attorney fees, costs and expenses of litigation to the Plaintiff. *Appellant's Appendix* at 19–22 (emphasis in original) (footnote supplied).

The Newspaper contends the findings of fact were clearly erroneous in the following respects: (1) This was a case of first impression, contrary to Finding No. 8; (2) the Newspaper did not litigate this case in a contentious manner, contrary to Finding No. 4, and the attorney fees should not be reduced on that basis; and (3) attorney Babb did not testify that this was an atypical appeal for which $35,000–$40,000 was a reasonable amount of attorney fees, contrary to Finding No. 9. We will address these contentions in order.

The trial court declined to find that *Knightstown I* was a case of first impression. Yet, as the Newspaper points out, we indicated that it was. We conclude the trial court used the phrase "first impression" in Finding No. 8 in a somewhat different context than it was used by this court in *Knightstown I*. We used it in the sense that no Indiana appellate court had to that point in time determined whether a settlement agreement drafted by an attorney and retained by a public agency's insurance company is a public record and, on that basis, subject to the requirements of APRA. The trial court here appears to have used it in the sense that the subject had previously been addressed by other parties and other (foreign) courts. That was significant for purposes of determining reasonable attorney fees because it indicated that the Newspaper was not operating in an area in which there was no precedent upon which it could draw in fashioning its arguments and conducting its negotiations. Clearly, litigating a case

without any such precedent is a more time-intensive proposition from a legal perspective. Thus, although there is a technical sense in which Finding No. 8 conflicts with our holding in *Knightstown I*, we are satisfied that the trial court did not use it in that sense and the finding is not clearly erroneous.

The Newspaper contends it did not litigate this case in a contentious manner, contrary to Finding No. 4. Again, we must determine the meaning of that finding in order to assess the claim of error. Technically, "contentious" means "an often perverse and wearisome tendency to quarrels and disputes." *Merriam–Webster's On-line Dictionary,* http://www.merriam-webster.com/dictionary/contentious (last visited February 15, 2008). In combination with the trial court's finding that the Newspaper litigated its case in such a way as to "substantially and needlessly increase[ ] the attorney fees and costs of this litigation to an unreasonable amount", it is clear that the trial court intended to convey in Finding No. 4 that the Newspaper incurred greater attorney fees by virtue of its propensity to file atypical motions not essential to its case. Although we are reluctant to characterize such motions as "perverse" or "wearisome" it does appear that the Newspaper was particularly active in filing motions opposing the Town in one way or another that were not essential to the Newspaper's case. The trial court detailed those motions to some extent in Finding No. 11. We need not undertake a motion-by-motion evaluation of the Newspaper's legal endeavors in this regard. It is enough to say that there is support in the record for the trial court's conclusion that the Newspaper's attorney fees were increased to some degree beyond what was necessary by virtue of a tendency to engage in what might fairly be characterized as legal "quarrels and disputes" not cen-

tral to its case. Thus, Finding No. 4 is not clearly erroneous.

Lastly in this regard, the Newspaper contends Finding No. 9 is clearly erroneous in indicating that attorney Babb testified that this was an atypical appeal for which $35,000–$40,000 was a reasonable amount of attorney fees. We believe the Newspaper is correct in this assertion. In point of fact, Babb testified that reasonable attorney fees for *a typical* appeal would be $35,000–$40,000. He then went on to testify that in cases such as this one, which he characterized as a "very unusual appeal," *Transcript* at 42, involving oral argument and a petition to transfer, reasonable attorney fees would be in the range of $55,000–$72,500, and perhaps even twice that much. Thus Finding No. 9 is clearly erroneous in this regard. The Town, in essence, contends this error is harmless. As we will explain, we are unable to determine whether this is true, i.e., whether the error matters, because of an internal inconsistency in the trial court's award of attorney fees.

In Finding No. 11, the trial court undertakes a detailed calculation of the attorney fees award. The court begins with the total amount claimed by the Newspaper (minus the rejected multiplier), and then subtracts from that total specific items that the trial court obviously concluded should not be charged against the Town and GIE/GIM. The result of that calculation is $55,212.46. We cannot, however, find that amount listed anywhere in the trial court's order. Although the first portion of the following finding—Finding No. 12—clearly implies that the amount set out in Finding No. 12 is the product of that calculation (i.e., "The Court finds that this will result in a total award which is . . ."), such is not the case. *Appellant's Appendix* at 22. Instead, Finding No. 12 described the amount awarded as "allowing

for atypical appellate attorney fees in the amount of $40,000.00 and trial level attorney fees in the amount of $27,612.46 which is comparable to the attorney fees of the local counsel." The sum of those two figures is $67,612.46, not $55,512.46. The former figure matches the amount of attorney fees awarded by the court. How can the inconsistencies between Finding Nos. 11 and 12, and between Finding No. 11 and the amount of the award, be reconciled? Put simply, they cannot.

The Town contends that the problem lies in a mathematical error on the trial court's part. That may be partially correct. It appears that the amount attributed to trial representation should have been $15,212.46 rather than $27, 212.46. Even if that is so, however, a problem remains. The trial court employed different methodologies in Finding Nos. 11 and 12. In Finding No. 11, the court subtracted. The minuend was the total amount of fees claimed (i.e., $125,327.09) and the subtrahend was the total of the itemized fees that the court determined should not be charged to the defendants/appellees (i.e., $69,884.63). Although the court did not state it, the difference, presumably the amount of the attorney fees awarded according to that calculation, was $55,512.46. In Finding No. 12, on the other hand, the trial court used addition. The court defined one of the addends as an amount in the range the trial court erroneously determined that attorney Babb had indicated was reasonable for an appeal of a case of this type, while the other addend was the amount the trial court, also apparently erroneously, determined had been incurred

at the trial court level. The sum, presumably the amount of attorney fees awarded according to that calculation, was $67,612.46.

We reiterate that we cannot discern which of the methods the trial court intended to use in calculating the amount of the award. Although the language of the findings seems to indicate that the amount of the award would be the same using either methodology, that is not the case. Thus, we remand with instruction to clarify whether the amount of attorney fees is to be calculated using the subtraction method reflected in Finding No. 11, or the addition method reflected in Finding No. 12. If it is the former, then the appropriate amount is $55,512.46. If it is the latter, in determining the amount of the award, the trial court must first correct the erroneous findings with respect to the two addends used in the calculation to reflect that (1) attorney Babb identified the range of attorney fees that is reasonable for an appeal of this type as $55,000–$72,500, and (2) the attorney fees attributable to trial representation presumably was $15,212.46.

3.

■ The Newspaper contends the trial court erred in denying the Newspaper's motion for change of judge under Ind. Trial Rule 76(C)(3). The version of T.R. 76(C)(3) in effect at the time of the Newspaper's motion established that a party may seek a change of judge "when a new trial is granted, whether the result of an appeal or not[.]"[3] Whether the Newspa-

---

3. Substantive amendments to T.R. 76(C)(3) became effective on January 1, 2007. The current version of the rule states:

(C) In any action except criminal no change of judge or change of venue from the county shall be granted except within the time herein provided. Any such appli-

cation for change of judge (or change of venue) shall be filed not later than ten [10] days after the issues are first closed on the merits. Except:

\* \* \* \* \*

(3) if the trial court or a court on appeal orders a new trial, or if a court on appeal

per was entitled to a change of judge after we remanded following *Knightstown I* depends, then, upon whether a "new trial" was granted within the meaning of T.R. 76(C)(3). The parties agree that because this issue requires interpretation of the Trial Rules, our review is de novo. *See Christenson v. Struss*, 855 N.E.2d 1029 (Ind.Ct.App.2006).

The Newspaper's central argument on this issue is:

> Banner did not lose the right to a change of judge on remand simply because the Court of Appeals reversed and directed the entry of judgment in Banner's favor rather than ordering less relief in the form of a new trial. Trial Rule 76(C)(3) does not limit a change of judge to a situation where a new trial is granted on all issues. *A party receiving a new trial or reversal is entitled to a change of judge even on one or more but less than all the issues. When a judgment is reversed, the trial court is required to grant a motion for a change of judge upon remand.*

*Appellant's Brief* at 17 (internal citation to authority omitted) (emphasis supplied). The Newspaper contends the highlighted statements in the above excerpt are supported by *Berkemeier v. Rushville Nat'l Bank*, 459 N.E.2d 1194 (Ind.Ct.App.1984) (*Berkemeier II* ). We believe the Newspaper's argument is drawn from the following paragraph:

> We conclude, therefore, that the determination of attorney fees is an issue in itself. Since T.R. 76(5) does not by its terms limit a change of venue to a situation where a new trial is granted on all issues, and since A.R. 15(N) provides for a new trial on one or more of the issues,

a party receiving a new trial or reversal is entitled to a change of venue from the county if, timely filed, even on one or more but less than all the issues.

*Id.* at 1198. This excerpt clarifies that T.R. 76 grants a right to change of judge even when a new trial has been ordered on less than all issues. It also clarifies that attorney fees is one of those "less than all" issues that might warrant the granting of a T.R. 76 change of judge motion. It goes too far, however, to say that *Berkemeier II* unequivocally grants a right to a change of judge whenever reversal was achieved at the appellate level or whenever attorney fees is sought upon remand. Such a broad reading separates the above discussion from its context.

We are mindful that the right to and amount of an award of attorney fees were issues specifically appealed in *Berkemeier II*. With respect to the first appeal in that case, i.e., *Berkemeier I*, the trial court granted default judgment against Berkemeier on the issue of attorney fees, thereby granting fees to the appellee/bank in the amount of $17,500.00. Berkemeier filed a motion to correct error arguing that the amount of the award was excessive. Upon appeal, this court determined that the appellee/bank failed to prove the amount of attorney fees it requested was reasonable, and "remanded to the trial court for further hearing on the issue of attorney's fees only." *Berkemeier v. Rushville Nat'l Bank*, 438 N.E.2d 1054 (Ind.Ct.App.1982). Upon remand, Berkemeier filed a motion for change of venue. That motion was denied and *Berkemeier II* ensued. We addressed several questions, one of which involved the request for change of venue. The block quote above might suggest that we determined the motion for change of

otherwise remands a case such that a further hearing and receipt of evidence are required to reconsider all or some of the issues heard during the earlier trial, the

parties thereto shall have ten [10] days from the date the order of the trial court is entered or the order of the court on appeal is certified

venue should have been granted. That is not the case, however. Instead, we "discussed" the issue in hopes it would provide guidance to the trial court should a similar motion be submitted at a later date. *Berkemeier v. Rushville Nat'l Bank*, 459 N.E.2d at 1198. In addition to the above excerpt, our discussion included the following:

It is true that when a cause is remanded and no new trial is ordered the change of venue rule may not apply. Also, it may be true under some circumstances where judgment is rendered upon default, dismissal, or summary judgment, that no trial was conducted and thus a request for a new trial is inappropriate. Since the original ruling on attorney fees was on default, and it was upon that default that a retrial was ordered, it is arguable that such new proceeding was not a new trial. However, we need not decide that question.

*Id.* (internal citation to authority omitted). It would seem that all of the circumstances cited as perhaps negating the applicability of T.R. 76 are present here, i.e., (1) no new trial was ordered, (2) judgment was rendered upon summary judgment and no trial was conducted, and (3) the original ruling on attorney fees was on default, and it was upon that default that a retrial was ordered. In short, *Berkemeier II* does not definitively address the situation before us here.[4]

The Town contends that this case is controlled instead by *State ex rel. Sink & Edwards, Inc. v. Hancock Superior Court*, 470 N.E.2d 1320 (Ind.1984), which was decided after *Berkemeier II*. In *Sink*, the Supreme Court was asked to reverse the trial court's decision to deny a motion for change of venue by absolute right under T.R. 76(5), the relevant part of which stated, "Provided further, when a new trial is granted, whether the result of an appeal or not, the parties thereto shall have ten (10) days from the date the order granting the new trial is entered on the record of the trial court." In the underlying action in *Sink*, this court had reversed summary judgment against Sink on the issue of prejudgment interest, and remanded with instructions to determine whether the appellees were entitled to prejudgment interest. Sink argued that it was entitled to a change of venue because upon remand the trial court would be required to conduct a hearing, which constituted a "new trial" within the meaning of T.R. 76. The Supreme Court rejected that argument, holding that a change of venue was not required. The court explained:

Respondents are also correct that since there has been no trial in this case, the Court of Appeals opinion can not [sic] be interpreted as an order for a new trial. We find that the Court of Appeals opinion did not order a new trial and, in fact, did not order the parties placed into the same position they were in before the entry of summary judgment such that all of the issues need be heard again. The Court of Appeals affirmed the decision of the trial court finding Sink obligated to Huber pursuant to the indemnification contract. The Court of Appeals remanded the cause to the trial court only to determine the reasonableness of the amount Huber

---

4. We note the Newspaper also cites *Gorman v. Northeastern REMC*, 597 N.E.2d 366 (Ind. Ct.App.1992) in support of its claim that *Berkemeier* mandates the granting of the Newspaper's change of venue motion. Such reliance is understandable in light of *Gorman's*, inaccurate summary of the disposition in *Berkemeier*, i.e., "Thus, the trial court clearly had jurisdiction over the case and a change of venue was mandated." *Id.* at 367. We reiterate, however, that after detailing several circumstances present in that case that *might* render T.R. 76 inapplicable, the *Berkemeier* panel expressly declined to say whether the motion should be granted upon remand.

paid as settlement to Allison and demanded from Sink as the amount of indemnification. The Court of Appeals also ordered the trial court to determine the propriety of fixing prejudgment interest as a part of its judgment. The trial court accordingly was ordered to make certain determinations regarding the amount of Huber's judgment which contemplates a continuation of the trial court's summary judgment hearing by the same trial judge. This is not the ordering of a new trial as contemplated by Ind.R.Tr.P. 76(5). The trial court properly found that Relator was not entitled to an automatic change of venue from the county.

*State ex rel. Sink & Edwards, Inc. v. Hancock Superior Court,* 470 N.E.2d at 1322.

 The Town further claims *State ex rel. Hahn v. Howard Circuit Court,* 571 N.E.2d 540 (Ind.1991) reaffirmed the principal announced in *Sink,* i.e., that "an appellate court's opinion only constitutes an order for a new trial where the appellate court reversed 'a judgment produced by a trial upon issues of law and issues of fact ...'". *Appellant's Brief* at 27 (quoting *State ex rel. Hahn v. Howard Circuit Court,* 571 N.E.2d at 541). In fact, *Hahn* clarifies the relationship between the issues decided upon appeal and the actions to be undertaken on remand, viz.,

> Courts conduct trials upon issues of law and issues of fact. The end result is a judgment. Upon reversal of a judgment produced by a trial upon issues of law and issues of fact, the appellate remand contemplates a retrial of like character, and the right to a change of judge arises anew under T.R. 76(5). Such a retrial is a new trial within the meaning of this rule, and this conclusion follows even though the issues to be retried do not include all those resolved in the first trial.

*State ex rel. Hahn v. Howard Circuit Court,* 571 N.E.2d at 541 (internal citations omitted). From this language, we deduce that in order to give rise to a change of judge as a matter of right upon remand, the matters to be decided upon remand must require a hearing and receipt of evidence *and* must involve at least one issue already tried and decided by the court. *See id.* ("the appellate remand contemplates a retrial *of like character*") (emphasis supplied). In each of the cases discussed above, the remanded issue or issues triggering application of the mandatory provisions of T.R. 76 was or were also before the trial court prior to appeal. We note that this conclusion is consistent with the 2007 amendment to T.R. 76(C)(3), which authorizes a change of judge "if the trial court or a court on appeal orders a new trial, or if a court on appeal otherwise remands a case such that a further hearing and receipt of evidence are required *to reconsider all or some of the issues heard during the earlier trial* [.]" *See Green v. Green,* 863 N.E.2d 473 (Ind.Ct.App.2007) (emphasis supplied).

Here, we remanded to the trial court with instructions to deliver the settlement agreement to the Newspaper. The Newspaper did not file a request for attorney fees until December 12, 2006—*after* the case was remanded. Therefore, the only matter requiring a hearing was an issue not present in the earlier proceedings. Accordingly, the mandatory provision of T.R. 76(C)(3) did not apply. The trial court did not err in denying the Newspaper's request for change of judge.

Judgment affirmed in part, reversed in part, and remanded with instructions.

MATHIAS, J., and ROBB, J., concur.