ATTORNEY FOR PETITIONER:
**JESSICA R. GASTINEAU**
OFFICE OF CORPORATION COUNSEL
Indianapolis, IN

ATTORNEYS FOR RESPONDENT:
**JEFFREY T. BENNETT**
**BRADLEY D. HASLER**
BINGHAM GREENEBAUM DOLL LLP
Indianapolis, IN

# IN THE
# INDIANA TAX COURT

FILED

Aug 30 2019, 4:01 pm

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

|  |  |  |
|---|---|---|
| MARION COUNTY ASSESSOR, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Cause No. 18T-TA-00026 |
| | ) | |
| STUTZ BUSINESS CENTER, LLC, | ) | |
| | ) | |
| Respondent. | ) | |

ON APPEAL FROM A FINAL DETERMINATION
OF THE INDIANA BOARD OF TAX REVIEW

**FOR PUBLICATION**
**August 30, 2019**

WENTWORTH, J.

The Marion County Assessor has appealed the Indiana Board of Tax Review's final determination that overruled his objection to the voluntary withdrawal, and ultimate dismissal of, Stutz Business Center, LLC's property tax appeals for the 2012 through 2014 assessment years. Upon review, the Court affirms the Indiana Board's final determination.

## FACTS AND PROCEDURAL HISTORY

During the years at issue, Stutz owned four parcels of land located in downtown Indianapolis, Center Township, Marion County, Indiana. (Cert. Admin. R. at 1-2, 43-44,

65-66, 97-98.)  The Assessor assigned Stutz's property a total assessed value of $3,668,000 for 2012, $3,783,500 for 2013, and $3,511,900 for 2014.  (See Cert. Admin. R. at 1-2, 11-12, 21-22, 33-34, 43-44, 53-54, 65-66, 75-76, 85-86, 97-98, 107-08, 117-18.)  Stutz subsequently appealed the assessments to the Marion County Property Tax Assessment Board of Appeals (the "PTABOA").  (See, e.g., Cert. Admin. R. at 3-8.)  The PTABOA, however, took no action on Stutz's appeals.  (See, e.g., Cert. Admin. R. at 9-10.)  As a result, Stutz transitioned its appeals to the Indiana Board on March 7, 2016.[1] (See, e.g., Cert. Admin. R. at 1-2, 127-28.)

On February 20, 2018, the Indiana Board's designated administrative law judge (the "ALJ") issued an order setting Stutz's appeals for a telephonic case-management conference on March 14, 2018.  (Cert. Admin. R. at 135-36.)  The Assessor's counsel filed her Notice of Appearance on the day of the telephonic case-management conference, but she was not prepared to discuss certain scheduling matters due to her unfamiliarity with the case.  (See Cert. Admin. R. at 137-39, 302-03 ¶ 2.)  Therefore, the ALJ "told the parties to submit a proposed appeal-management plan within 30 days." (Cert. Admin. R. at 302-03 ¶ 2.)

On April 17, 2018, Stutz filed its "Proposed Appeal Management Plan."  (Cert. Admin. R. at 142-46.)  The Assessor did not submit his own proposed appeal management plan, and he did not object to Stutz's Proposed Appeal Management Plan. (Cert. Admin. R. at 302-03 ¶ 2.)  Consequently, the ALJ assumed that the Assessor had

---

[1]  Indiana Code § 6-1.1-15-1 allowed Stutz to pursue its appeals with the Indiana Board without first receiving a final determination from the PTABOA  See IND. CODE § 6-1.1-15-1(o) (2016) (repealed 2017) (indicating that when a property tax assessment board of appeals fails to conduct a hearing on an appeal within 180 days of its filing, the appeal may proceed directly to the Indiana Board).

no objections and adopted Stutz's Proposed Appeal Management Plan on May 11, 2018. (See Cert. Admin. R. at 147-48, 302-03 ¶ 2.) The Appeal Management Plan provided 1) the parties were to identify expert witnesses and exchange expert reports by July 12, 2018; 2) the parties were to complete discovery by August 10, 2018; and 3) a three-day hearing on all of Stutz's appeals would commence on September 17, 2018. (Cert. Admin. R. at 147-50.)

On June 27, 2018, the Assessor served Stutz with his written discovery requests that, among other things, sought to determine whether Stutz's property had been appraised to qualify for mortgages and to obtain copies of any related appraisals. (See, e.g., Cert. Admin. R. at 193 ¶ 1, 202-03, 213.) Stutz objected to the Assessor's discovery requests and did not produce any appraisals, explaining that the requests were irrelevant and unduly burdensome because they utilized "limitless" timeframes. (See Cert. Admin. R. at 202-03, 213.) After discovering that Stutz had mortgages in 2011, 2012, and 2017, the Assessor notified Stutz of his intent to depose both the signatory of the mortgages and Stutz's designated 30(B)(6) witness on August 29, 2018. (See Cert. Admin. R. at 194 ¶¶ 6-7, 202-03, 222-26.) One day before the scheduled depositions, Stutz gave the Assessor a copy of an appraisal for one of its parcels. (See Cert. Admin. R. at 194 ¶ 8.) After the depositions, Stutz searched for and eventually located six additional appraisals ranging from 1998 through 2017. (See Cert. Admin. R. at 194 ¶ 11.) (See also Cert. Admin. R. at 227.) Stutz gave the Assessor five of those appraisals, but it withheld the 2017 appraisal on the basis of relevancy. (See Cert. Admin. R. at 227, 232-36.)

On September 7, 2018, the Assessor filed a Motion to Compel with the Indiana Board, seeking the production of the 2017 appraisal. (See Cert. Admin. at 193-229.) That

3

same day, Stutz filed an unopposed motion that requested the three-day hearing be shortened to two-days, commencing on September 18, 2018, because neither party planned to utilize expert witnesses. (See Cert. Admin. R. at 129-32 (providing that the parties did not disclose expert witnesses or exchange expert witness reports by the July 12, 2018, deadline).) Stutz also filed a "Motion for Pre-Hearing Conference" seeking guidance regarding "the preclusion of expert witness testimony at [the] hearing." (See Cert. Admin. R. at 161-92.) The Indiana Board granted both of Stutz's motions and ordered the parties to appear for a telephonic pre-hearing conference on September 12, 2018. (Cert. Admin. R. at 133-34, 230-31.)

During the pre-hearing conference, the Assessor indicated that he did not intend to use any of the exhibits that caused Stutz to believe expert witness testimony would be offered at the hearing. (See Cert. Admin. R. at 304 ¶ 7.) The Assessor further explained that he intended to use "data from the consumer price index and [his] witness would simply perform mathematical calculations to Stutz's appraisal." (Cert. Admin. R. at 304 ¶ 7.) The ALJ offered Stutz the opportunity to depose the Assessor's witness, but Stutz declined. (Cert. Admin. R. at 304 ¶ 7.) The ALJ also granted the Assessor's Motion to Compel, ordering Stutz to produce a copy of its 2017 appraisal. (See Cert. Admin at 304 ¶ 7.) Later that day, Stutz filed its "Notice of Withdrawal of Appeals" ("Notice of Withdrawal") that provided: "[Stutz] herewith respectfully withdraws its [appeals] in this case which are detailed in the list attached hereto as Exhibit A. As a result, the hearing currently set to begin on September 18, 2018 may be vacated." (Cert. Admin. R. at 266-68.)

The Assessor promptly objected, claiming that Stutz cited no authority to support

4

its right to voluntarily withdraw its appeals, and he had "already incurred 'substantial expense' due to the time, effort, and research necessary to obtain evidence from [Stutz]." (See Cert. Admin. R. at 269-71 (citation omitted).) In addition, the Assessor claimed he would be prejudiced by the withdrawal because the evidence supported an increase in Stutz's assessments and "the time to increase the 2012 to 2014 assessments outside of the appeals process had already lapsed." (See Cert. Admin. R. at 270-71.)

In response, Stutz explained that Indiana Trial Rule 41(A)(1)(a) allowed for the withdrawal of its appeals without an order from the Indiana Board because the Assessor had not raised "the equivalent of a cognizable counterclaim" and its Notice of Withdrawal was filed before any evidentiary hearings were held. (See Cert. Admin. R. at 277-79.) Stutz further asserted that the Assessor had "made no showing by affidavit or otherwise of having incurred any 'substantial expense'" and he would not be legally prejudiced by the withdrawal because neither his substantive nor vested rights would be impaired.[2] (See Cert. Admin. R. at 279-85 (citation omitted).)

On September 17, 2018, the Indiana Board issued its "Order Dismissing [Stutz's] Appeals." (Cert. Admin. R. at 302-11.) In its Order, the Indiana Board determined that the Assessor did not show he incurred a substantial expense because he: 1) "point[ed] to activities, such as conducting discovery, that are typically involved in preparing for a hearing[;]" 2) did not quantify any of the associated expenses; and 3) did not provide evidence to show he retained an expert. (See Cert. Admin. R. at 307 ¶ 14.) Moreover, the Indiana Board found no evidence of a substantial expense because the proceedings

---

[2] A "substantive right" is "[a] right that can be protected or enforced by law; a right of substance rather than form." BLACK'S LAW DICTIONARY 1584 (11th ed. 2019). A "vested right" is "[a] right that so completely and definitely belongs to a person that it cannot be impaired or taken away without the person's consent." Id. at 1585.

were not yet at an advanced stage. (<u>See</u> Cert. Admin. R. at 307-08 ¶ 15.) Finally, the Indiana Board found the Assessor's claims of legal prejudice unavailing because he had not raised a counterclaim. (<u>See</u> Cert. Admin. R. at 309 ¶¶ 19-20.)

On November 1, 2018, the Assessor initiated this original tax appeal. On November 21, 2018, Stutz filed a motion to dismiss, claiming the Court did not have subject matter jurisdiction over the Assessor's case. <u>See</u> <u>Marion Cty. Assessor v. Stutz Bus. Ctr., LLC</u>, 119 N.E.3d 239, 240 (Ind. Tax Ct. 2019). The Court subsequently denied Stutz's motion to dismiss and established a briefing schedule. <u>See</u> <u>id.</u> at 245. The Court heard the parties' oral arguments on April 25, 2019. Additional facts will be supplied as necessary.

## STANDARD OF REVIEW

The party seeking to overturn an Indiana Board final determination bears the burden of demonstrating its invalidity. <u>Osolo Twp. Assessor v. Elkhart Maple Lane Assocs.</u>, 789 N.E.2d 109, 111 (Ind. Tax Ct. 2003). Therefore, to prevail the Assessor must demonstrate to the Court that the Indiana Board's final determination is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; contrary to constitutional right, power, privilege, or immunity; in excess of or short of statutory jurisdiction, authority, or limitations; without observance of the procedure required by law; or unsupported by substantial or reliable evidence. <u>See</u> IND. CODE § 33-26-6-6(e)(1)-(5) (2019).

## LAW

Indiana Trial Rule 41(A)(1) governs the voluntary dismissal of an entire case, certain defendants, or specific claims by a plaintiff. <u>See</u> <u>generally</u> Ind. Trial Rule 41(A)(1).

6

See also Geiger & Peters, Inc. v. Am. Fletcher Nat'l Bank & Tr. Co., 428 N.E.2d 1279, 1281 (Ind. Ct. App. 1981) (holding that "under [Trial Rule 41(A)] less than all of the parties and less than all of the claims may be dismissed") (citations omitted). The Rule states in pertinent part:

(1) *By plaintiff—By Stipulation.* Subject to contrary provisions of these rules or of any statute, an action may be dismissed by the plaintiff without order of court;

(a) by filing a notice of dismissal at any time before service by the adverse party of an answer or of a motion for summary judgment, whichever occurs first[.]

T.R. 41(A)(1)(a). The purpose of the Rule is "'to eliminate evils resulting from the absolute right of a plaintiff to take a voluntary nonsuit at any stage of the proceedings before the pronouncement of judgment and after the defendant had incurred substantial expense or acquired substantial rights.'" Joyce Sportswear Co. v. State Bd. of Tax Comm'rs, 684 N.E.2d 1189, 1193 (Ind. Tax Ct. 1997) (citing Rose v. Rose, 526 N.E.2d 231, 235 (Ind. Ct. App. 1988)), review denied. Although the Rule does not expressly address the timing for voluntary dismissals of administrative proceedings that do not require responsive pleadings, (see T.R. 41(A)(1)(a)), those circumstances were addressed by this Court in Joyce Sportswear. See generally Joyce Sportswear, 684 N.E.2d at 1191-94. The Court explained in that case that the test for determining the propriety of a voluntary dismissal is whether the party opposing the dismissal "can demonstrate either a substantial expense or legal prejudice[.]" See id. at 1193. Therefore, the resolution of this matter necessarily will require an evaluation of the specific facts related to each.

**ANALYSIS**

On appeal, the Assessor contends that the Indiana Board's final determination

7

constitutes an abuse of discretion and must be reversed because it arbitrarily imposed new rules, in contravention of the law, and it is not supported by substantial evidence. (See, e.g., Oral Arg. Tr. at 4-5.)  More specifically, the Assessor maintains that the Indiana Board erred in finding that he did not incur a substantial expense or would not have been legally prejudiced by the withdrawal of Stutz's appeals.  (See, e.g., Pet'r Br. at 8-14.)

## 1.  Substantial Expense

The Assessor claims that the Indiana Board erroneously found he had not incurred a substantial expense by creating a rule mandating that two evidentiary hearings be held before a voluntary dismissal could be successfully defeated.  (See Oral Arg. Tr. at 4, 19.)  The Assessor explains there was no reason to create that rule given that he demonstrated Stutz's appeals "caused Marion County taxpayers substantial expense . . . [because they] required the Assessor to engage in written discovery, depositions, and an unnecessarily protracted discovery dispute."  (See Pet'r Br. at 9-10.)  (See also Oral Arg. Tr. at 22-23.)

In its final determination, the Indiana Board stated:

> Nor have the appeals proceeded to anything like the advanced stage of the proceedings in Joyce Sportswear, where the State Board had already held two evidentiary hearings and its hearing officer had notified the taxpayer that she was going to recommend increasing the assessments.  To the contrary, while Stutz waited until near the eve of the hearing to file its withdrawals, the Assessor has shown remarkably little interest in the appeals until recently.  He did not retain counsel until shortly before the pre-hearing conference set by the ALJ, and counsel was insufficiently familiar with the case to discuss even rudimentary scheduling issues.  While counsel served some basic written discovery, she did so in a manner that invited objection.  We recognize that she also took two depositions, the necessity for which admittedly appears to have been caused by Stutz's inaccurate and incomplete responses to some of her discovery requests.  But that is simply not the type of substantial expense contemplated by Joyce Sportswear.

(Cert. Admin. R. at 307-08 ¶ 15.)  The Indiana Board refers to the two evidentiary hearings

8

held in Joyce Sportswear to contrast the late stage of proceedings in that case with the earlier stage here, not to impose a new evidentiary hearing requirement. (Compare Cert. Admin. R. at 307-08 ¶ 15 with Joyce Sportswear, 684 N.E.2d at 1193-94.) Indeed, this paragraph states specific factual findings supporting the Indiana Board's conclusion that the proceedings were not at an advanced stage, explaining that the stage of the proceedings fails to show that the Assessor incurred a substantial expense.

Furthermore, the facts support the Indiana Board's conclusion that the Assessor did not incur a substantial expense because they show that he spent little time on the 2½ year old administrative appeal. (See, e.g., Cert. Admin. R. at 302-04 ¶¶ 2, 4-7 (indicating that the Assessor did not prepare his own appeal management plan, did not commence discovery until about 2½ months before the hearing date, and did not expend time working with an expert to prepare an appraisal report or testify at the hearing).) In addition, the fact that the Assessor engaged in a discovery dispute over no more than a 2½ month period also fails to indicate he incurred a substantial expense when more extensive and truly protracted discovery has not precluded the voluntary dismissal of an action. See, e.g., U.S. Fid. & Guar. Co. v. Rodgers, 882 P.2d 1037, 1040 (Mont. 1994) (explaining that under a federal rule similar to Indiana Trial Rule 41(a)(1)(a), federal courts declined to set aside plaintiffs' notices of voluntary dismissal "even though extensive discovery had been conducted for more than a year in [one case] and approximately one year in [another case]") (citations omitted).

Finally, the Assessor has asked the Court to take judicial notice of the "rates typically charged by counsel and the expenses incurred in written discovery, depositions, and an unnecessarily protracted discovery dispute in order to obtain exhibits and prepare

9

for an [Indiana Board] hearing" to substantiate his claim of substantial expense. (See Pet'r Br. at 11-12; Pet'r Reply Br. at 3-4.) Even if the Court were to exercise its discretion and take judicial notice of the reasonable attorney fees in this case, the attorney's fees incurred in a routine property tax proceeding, like here, cannot, without more, rise to the level of a substantial expense. See, e.g., Ind. Evidence Rule 201(a); South v. White River Farm Bureau Co-op., 639 N.E.2d 671, 674 (Ind. Ct. App. 1994) (stating that courts may take judicial notice of reasonable attorney fees in routine cases involving relatively small amounts, but in non-routine cases, courts must hold evidentiary hearings to determine the appropriate amount of fees), trans. denied. Indeed, the Assessor has provided no relevant evidence, authority, or persuasive argument to indicate why judicially-noticed attorney fees would constitute a "substantial expense." (See generally Pet'r Reply Br. at 3-4.) Accordingly, the Court declines to take judicial notice and will not reverse the Indiana Board's final determination on these grounds.

## 2. Legal Prejudice

The Assessor also claims that the Indiana Board's final determination must be reversed because it arbitrarily created a new rule, in contravention of its own procedural rules and Joyce Sportswear, by requiring the filing of mandatory counterclaims to defeat a notice of withdrawal. (See Oral Arg. Tr. at 5-18 (citing Cert. Admin. R. at 309 ¶ 19); Pet'r Br. at 14-15.) Moreover, the Assessor argues that he "and the Marion County taxpayers would be prejudiced by [Stutz's] withdrawal [of its appeals] because the time to increase the assessment[s] for assessment dates 2012 and 2014 outside of the appeal process has lapsed." (See Pet'r Br. at 13-14; see also Oral Arg. Tr. at 29-35.)

At the outset, for purposes of Indiana Trial 41(A)(1)(a) "'[l]egal prejudice [may be]

10

shown when actual legal rights are threatened or when monetary or other burdens appear to be extreme or unreasonable[.]'" See Principal Life Ins. Co. v. Needler, 816 N.E.2d 499, 503 (Ind. Ct. App. 2004) (citation omitted). In its final determination, the Indiana Board discussed the statutory regime governing its predecessor in Joyce Sportswear. (See Cert. Admin. R. at 309 ¶ 18.) Then, the Indiana Board stated:

> Here, by contrast, we are operating under a statutory regime where parties present their cases to a purely quasi-judicial body that has no independent assessing authority. The Assessor characterizes his claim as analogous to a counterclaim. But the mere legal right to file a counterclaim, which exists in virtually every civil case, does not relieve parties of the duty to assert that claim. There is simply no 'statutory counterclaim' that arises the moment a taxpayer files an appeal. [Therefore, i]f an assessor wishes to preclude voluntary withdrawal on grounds that doing so will prejudice his legal right to seek a determination raising a taxpayer's assessment, he must concretely assert that claim.

> The Assessor did not do so here. Even when faced with Stutz's withdrawal, he made only indirect and ambiguous references to his right to seek an order raising the assessments. And while the scheduled hearing on the merits was merely days away, he did not indicate the value, or even a range of values, that he was seeking. In short, he has not raised the functional equivalent of a counterclaim.

(Cert. Admin. R. at 309 ¶¶ 19-20.)

Nothing within the cited paragraphs of the Indiana Board's final determination suggests that it expressly or implicitly created a new rule requiring mandatory counterclaims. Instead, those paragraphs explain that without a counterclaim or its equivalent asserting his legal right to seek an increased assessment, the Assessor failed to demonstrate a legal right was prejudiced. In other words, the Assessor did not acquire either a substantive or a vested right to increase Stutz's assessments upon the filing of its administrative appeals. But see, e.g., IND. CODE §§ 6-1.1-9-1, -4 (2019) (providing that

11

assessing officials may increase the assessments of undervalued property within certain periods). Accordingly, by dismissing Stutz's appeals the Indiana Board effectively determined that the dismissal would not impair the Assessor's substantive or vested rights that might have been raised had he filed a counterclaim.

The Assessor further maintains that filing a counterclaim is impossible because the Indiana Board's procedural rules do not specify exactly how a counterclaim is to be asserted. (See Pet'r Br. at 14-15.) The Indiana Board's procedural rules, however, neither specify nor prohibit filing a counterclaim, but rather incorporate the Trial Rules absent any conflict. See 52 IND. ADMIN. CODE 2-1-2.1 (2019) (stating "[t]he Indiana Rules of Trial Procedure may be applied [to Indiana Board proceedings] to the extent that [they] do not conflict with the statutes governing property tax appeals or this title"). Furthermore, the facts show that the parties themselves were able to figure out how to file a notice of withdrawal and an objection thereto despite the lack of Indiana Board rules specifically incorporating or explaining the process. Accordingly, the Court will not reverse the Indiana Board's final determination on this basis either.

**CONCLUSION**

The Court finds that the Indiana Board's final determination does not constitute an abuse of discretion because it comports with the law and is supported by substantial evidence. Given that Stutz's voluntary withdrawal of its appeals does not violate the purpose of Indiana Trial Rule 41(A)(1)(a), the Court AFFIRMS the final determination of the Indiana Board.

12